ROBERT I. GRODY AND KERRY KAPLAN *v.* STATE OF INDIANA.

[No. 1270S294. Filed February 10, 1972.]

*F. Thomas Schornhorst*, of Bloomington, *Craig Eldon Pinkus*, of Indianapolis, for appellants.

*Theodore L. Sendak*, Attorney General, *Mark Peden*, Deputy Attorney General, for appellee.

DEBRULER, J.—Appellants were charged in the Monroe Circuit Court with a violation of I. C. 1971, 35-19-4-3, being Burns § 10-4533, which reads as follows:

"It shall be a misdemeanor for any person to refuse to leave the premises of any institution established for the purpose of the education of students enrolled therein when so requested, regardless of the reason, by the duly constituted officials of any such institution."

Appellants filed a motion to quash the affidavit on the grounds the statute was unconstitutional due to vagueness and overbreadth. The trial court overruled the motion, convicted the appellants in a trial without jury, and fined them each $50.00.

Neither party brought the transcript of the trial evidence before this Court on appeal and the sole issue in this case is whether the statute is void on its face due to unconstitutional vagueness and overbreadth in violation of the First and Fourteenth Amendments to the United States Constitution.

The United States Supreme Court has long held that "a law forbidding or requiring conduct in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates due process of law." *Baggett* v. *Bullitt* (1964), 377 U. S. 360, 84 S. Ct. 1316, 12 L. Ed. 2d 377; *Connally* v. *General Construction Co.* (1926), 269 U. S. 385, 46 S. Ct. 126, 70 L. Ed. 322.

A distinct but closely related concept is that of statutory overbreadth. A penal statute is unconstitutionally overbroad if its sanctions are applicable to activities that are protected by the First Amendment. *Coates* v. *Cincinnati* (1971), 91 S. Ct. 1686; *Keyishian* v. *Bd. of Regents* (1967), 385 U. S. 589, 87 S. Ct. 675, 17 L. Ed. 2d 629; *Elfbrandt* v. *Russell* (1966), 384 U. S. 11, 86 S. Ct. 1238, 16 L. Ed. 2d 321; *Dombrowski* v. *Pfister* (1965), 380 U. S. 479, 85 S. Ct. 1116, 14 L. Ed. 2d 22; *Aptheker* v. *Secretary of State* (1964), 378 U. S. 500, 84 S. Ct. 1659, 12 L. Ed. 2d 992; *NAACP* v. *Button* (1963), 371 U. S. 415, 83 S. Ct. 328, 9 L. Ed. 2d 405; *Shelton* v. *Tucker* (1961), 364 U. S. 479, 81 S. Ct. 247, 5 L. Ed. 2d 231; *Cramp* v. *Bd. of Public Instruction* (1961), 368 U. S. 278, 82 S. Ct. 275, 7 L. Ed. 2d 285; *Smith* v.

*People of California* (1959), 361 U. S. 147, 80 S. Ct. 215, 4
L. Ed. 2d 205; *Thornhill* v. *Alabama* (1940), 310 U. S. 88, 60
S. Ct. 736, 84 L. Ed. 1093; *Castro* v. *Superior Court of Los
Angeles County,* 9 Cal. App. 3d 675, 88 Cal. Rptr. 500; "Note,
The Void-For-Vagueness Doctrine in the Supreme Court", 109
U. Pa. L. Rev. 67 (1960) ; "The First Amendment Overbreadth
Doctrine", 83 Harv. L. Rev. 844 (1969). The invalidity of such
a statute rests on the fact that it constitutes a substantial de-
terrent to the free exercise of important First Amendment
rights. As the United States Supreme Court said in *NAACP*
v. *Button, supra*:

> "The objectionable quality of vagueness and overbreadth
> does not depend upon absence of fair notice to a criminally
> accused or upon unchanneled delegation of legislative
> ■ powers, but upon the danger of tolerating, in the
> area of First Amendment freedoms, the existence of
> a penal statute susceptible of sweeping and improper appli-
> cation. . . . These freedoms are delicate and vulnerable, as
> well as supremely precious in our society. The threat of
> sanctions may deter their exercise almost as potently as the
> actual application of sanctions. . . . Because First Amend-
> ment freedoms need breathing space to survive, government
> may regulate in the area only with narrow specificity." 371
> U. S. at 432-433.

In *Keyishian* v. *Bd. of Regents, supra,* the Court said:

> "Where statutes have an overbroad sweep, just as where
> they are vague, 'the hazard of loss or substantial impair-
> ment of those precious rights may be critical' . . . since
> those covered by the statute are bound to limit their be-
> havior to that which is unquestionably safe." 385 U. S. at
> 609.

Though the doctrines of "vagueness" and "overbreadth"
are theoretically distinct, the Court often uses them both when
dealing with a statute having an inhibiting effect on First
Amendment activities.

The issue then is whether a person could be criminally li-
able under § 10-4533 for engaging in conduct protected by

the First Amendment. It is clear that the crime consists in refusing to leave the premises of the educational institution when requested to do so by some "official". The question then becomes whether the "official" can request a person to leave the premises solely because the person is engaging in expressive conduct, even though that conduct is protected by the First Amendment. If he can, then the statute is unconstitutionally overbroad.

This statute attempts to grant to some undefined school "official" the power to order the cessation of *any* kind of activity whatsoever, by *any* person whatsoever and the official does not need to have any special reason for the order. The official's power extends to teachers, employees, students and visitors and is in no way confined to suppressing activities that are interfering with the orderly use of the premises. This statute empowers the official to order any person off the premises because he does not approve of his looks, his opinions, his behavior, no matter how peaceful, or *for no reason at all*. Since there are *no* limitations on the reason for such an order, the official can request a person to leave the premises solely because the person is engaging in expressive conduct even though that conduct may be clearly protected by the First Amendment. If the person chooses to continue the First Amendment activity he can be prosecuted for a crime under § 10-4533. This statute is clearly unconstitutionally overbroad.

Burns § 10-4533 is also invalid on an additional ground. Since the persons subject to the act may engage in First Amendment protected activities only with the permission of these unknown "officials", this statute in effect delegates the power of censorship and prior restraint of the exercise of expressive activities protected by the First Amendment. The United States Supreme Court has clearly enunciated the principles to be applied in such cases. In *Staub* v. *City of Baxley* (1958), 355 U. S. 313, 78 S. Ct. 277, 2 L. Ed. 2d 302, the Court said:

"It is settled by a long line of recent decisions of this Court that an ordinance which, like this one, makes the peaceful enjoyment of freedoms which the Constitution guarantees contingent upon the uncontrolled will of an official—as by requiring a permit or license which may be granted or withheld in the discretion of such official—is an unconstitutional censorship or prior restraint upon the enjoyment of those freedoms." 355 U. S. at 322.

*Niemotko* v. *Maryland* (1951), 340 U. S. 268, 71 S. Ct. 325, 95 L. Ed. 267; *Cantwell* v. *Connecticut* (1940), 310 U. S. 296, 60 S. Ct. 900, 84 L. Ed. 1213; *Hague* v. *CIO* (1939), 307 U. S. 496, 59 S. Ct. 954, 83 L. Ed. 1423; *Lovell* v. *Griffin* (1937), 303 U. S. 444, 58 S. Ct. 666, 82 L. Ed. 949. In *Shuttlesworth* v. *Birmingham* (1969), 394 U. S. 147, 89 S. Ct. 935, 22 L. Ed. 2d 162, the Court said:

"There can be no doubt that the Birmingham ordinance, as it was written, conferred upon the City Commission virtually unbridled and absolute power to prohibit any 'parade,' 'procession,' or 'demonstration' on the city's streets or public ways. For in deciding whether or not to withhold a permit, the members of the Commission were to be guided only by their own ideas of 'public welfare, peace, safety, health, decency, good order, morals or convenience.' This ordinance as it was written, therefore, fell squarely within the ambit of the many decisions of this Court over the last 30 years, holding that a law subjecting the exercise of First Amendment freedoms to the prior restraint of a license, without narrow, objective, and definite standards to guide the licensing authority, is unconstitutional." 394 U. S. at 150-151.

In *Kunz* v. *New York* (1951), 340 U. S. 290, 71 S. Ct. 312, 95 L. Ed. 280, the Court said:

". . . we have consistently condemned licensing systems which vest in an administrative official discretion to grant or withhold a permit upon broad criteria unrelated to proper regulation of public places." 340 U. S. at 294.

We have found no case where the delegation of power was as sweeping and arbitrary as in § 10-4533. This is sufficient to render the statute invalid under the First Amendment.

It is well to keep in mind that this holding in no way impairs the State's right to use criminal statutes to prohibit the interference with education activities and good order on the premises of educational institutions. However, the statutes must be narrowly directed at the objects of legitimate concern to the State. Without intimating that they are consitutionally valid, we note that in 1969 O. A. G. 15, the Indiana Attorney General has listed over forty sections of the criminal code which in his opinion are applicable to control the unlawful conduct which might occur on the premises of Indiana educational institutions. In addition, the Boards of Trustees of the State universities are empowered "to govern, by specific regulation and other lawful means, the conduct of students, faculty, employees, and others while upon the property owned by or used by or occupied by the institution." I. C. 1971, 20-11-1-2, being Burns § 28-6502(b).

The appellee argues that the State has the power to regulate the use of public property just as private owners do and this statute is in effect a trespass statute, applied specifically to educational institutions, to be used in regulating the physical presence of persons on campus. Appellee relies on the following quote from *Adderley* v. *Florida* (1966), 385 U. S. 39, 87 S. Ct. 242, 17 L. Ed. 2d 149:

"The State, no less than a private owner of property, has power to preserve the property under its control for the use to which it is lawfully dedicated." 385 U. S. at 47.

That general proposition is undoubtedly correct. However, in deciding concrete cases the Court must consider two things: First, the use to which the property is in fact dedicated and second, the specificity of the statute attempting the regulation. In *Adderley, supra,* the Supreme Court upheld a conviction for "trespass with malicious intent" where the defendants conducted a demonstration on jail grounds and refused to leave when ordered to by the Sheriff. The critical fact in that case was that the public property involved, the

jail premises, was not normally used by the public for any purpose but was reserved for transporting prisoners to and from the jail and for commercial concerns servicing the jail. The Court properly held that that type of public property was subject to different rules regarding its use for First Amendment activities than are for example, parks, *Hague* v. *CIO, supra;* public streets, *Cox* v. *Louisiana* (1965), 379 U. S. 536, 85 S. Ct. 453, 13 L. Ed. 2d 471; or state capitol grounds; *Edwards* v. *South Carolina* (1963), 372 U. S. 229, 83 S. Ct. 680, 9 L. Ed. 2d 697. From the standpoint of the latitude to be allowed in the exercise of First Amendment rights it is hard to conceive of anything more unlike a jail and its environs than a college campus. A jail is the epitome of security and regimentation while a college truly thrives only when it fosters open debate and principled dissent to the conventional wisdom of the day. The exercise of First Amendment rights is inevitably going to be an integral part of such an environment.

Of course, the State can by specific and narrowly drawn rules regulate the time, place, duration and manner of use of the various types of school property to further the ends of education. As the United States Supreme Court said in *Cox* v. *Louisiana, supra*:

> "The right of free speech and assembly, while fundamental in our democratic society, still do not mean that everyone with opinions or beliefs to express may address a group at any public place and at any time." 379 U. S. at 554. See also *Cohen* v. *California* (1971), 91 S. Ct. 1780.

But the very attainment of those ends requires an assured freedom to speak and publish ideas and to assemble to discuss them, in a manner consistent with the orderly use of the property for its dedicated purposes. That freedom is gone if it exists only at the whim of certain officials. In holding the trespass statute in *Adderley* was not vague or overbroad the Court contrasted it with the breach of the peace statute held invalid in *Edwards* v. *South Carolina, supra,* saying:

"The South Carolina breach-of-the-peace statute was thus struck down as being so broad and all-embracing as to jeopardize speech, press, assembly and petition, under the constitutional doctrine enunciated in Cantwell v. State of Connecticut, 310 U. S. 296, 307-308, 60 S. Ct. 900, 904-905, 84 L. Ed. 1213 and followed in many subsequent cases. And it was on this same ground of vagueness that in Cox v. Louisiana . . . the Louisiana breach-of-the-peace law used to prosecute Cox was invalidated." 385 U. S. at 42.

Thus, *Adderley* involved a non-vague statute and public property whose nature required highly restricted use by the general public. Neither of those elements is present in this case.

Appellee argues that even if the statute as it now reads is unconstitutional it is subject to a narrowing construction which would save it. Appellee says the statute can be "construed so as to make it the duty of one upon premises of an educational institution to leave upon request only when he is obstructing free passage or interfering with the orderly activities to which the institution is dedicated."

Appellee in effect requests this Court to construe the statute so as to create limitations on the reasons the official may legitimately use to order someone off of the educational premises. We decline to do so because we think it would be beyond our power to alter the statute to that extent. The Legislature explicitly said the official's exercise of power was legitimate "regardless of the reason." Although other portions of the statute are extremely vague there is nothing ambiguous about *that* portion of the statute and therefore there is nothing to construe. We construe statutes only where there is some ambiguity or vagueness which requires construction. *J. & J. Sales* v. *Eads* (1971), 257 Ind. 485, 275 N. E. 2d 802; *Leach* v. *City of Evansville* (1937), 211 Ind. 444, 7 N. E. 2d 207. If the statute has a plain meaning then it must be given effect. *Cheney* v. *State* (1905), 165 Ind. 121, 74 N. E. 892. It is not within the province of this Court to expand or contract the meaning of a statute by reading into it language

which will, in the opinion of the Court, correct any supposed omissions or defects therein. *Rogers* v. *Calumet National Bank* (1938), 213 Ind. 576, 12 N. E. 2d 261. In facing a similar situation in *Aptheker* v. *Secretary of State, supra,* the Supreme Court said:

> "To put the matter another way, this Court will not consider the abstract question of whether Congress might have enacted a valid statute but instead must ask whether the statute that Congress did enact will permissibly bear a construction rendering it free from constitutional defects.
>
> "The clarity and preciseness of the provision in question make it impossible to narrow its indiscriminately cast and overly broad scope without substantial rewriting." 378 U. S. at 515.

This is especially true in this case where omission to be cured concerns the appropriate limitations to be placed on the official's discretion. The Legislature is peculiarly suited to making this determination in the first instance and we decline to usurp their role.

Judgment reversed and appellants ordered discharged.

Givan, Hunter and Prentice, JJ., concur; Arterburn, C. J., concurs in result.

NOTE.—Reported in 278 N. E. 2d 280.