**FOR PUBLICATION**



APPELLANT PRO SE:

**MICHAEL L. HARRIS**
New Castle, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ELLEN H. MEILAENDER**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| MICHAEL L. HARRIS, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 20A04-1204-CR-225 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE ELKHART SUPERIOR COURT
The Honorable David C. Bonfiglio, Judge
Cause No. 20D06-0911-FD-383

March 27, 2013

**OPINION – FOR PUBLICATION**

**RILEY, Judge**

STATEMENT OF THE CASE

Appellant-Defendant, Michael L. Harris (Harris), appeals his conviction and sentence for Count I, failure to register as a sex offender, a Class D felony, Ind. Code § 11-8-8-17; and Count II, sex offender internet offense, a Class A misdemeanor, I.C. § 35-42-4-12.

We affirm in part and reverse in part.

ISSUES

Harris raises three issues on appeal, which we restate as the following four issues:

(1) Whether Harris's convictions under I.C. § 11-8-8-17 and I.C. § 35-42-4-12 violate the First Amendment of the United States Constitution;

(2) Whether Harris's conviction under I.C. § 11-8-8-17 violates Harris's right of free expression under the Indiana Constitution;

(3) Whether I.C. § 11-8-8-8 constitutes an *ex post facto* law under the Indiana Constitution as applied to Harris; and

(4) Whether the evidence was sufficient to convict Harris of failure to register as a sex offender under I.C. § 11-8-8-17.

FACTS AND PROCEDURAL HISTORY

In 1999, Harris was convicted of Class B felony child molestation and sentenced to ten years' incarceration. Harris was released to parole and reincarcerated on multiple occasions until his sentence was completed in 2008. Initially, Harris was required to

2

register as a sex offender for ten years commencing December 1, 2008; however, by operation of law, Harris's status changed to that of a sexually violent predator. As a result, he is subject to lifetime registration and reporting requirements.

Following his release from incarceration, Harris filled out a sex and violent registration offender form provided by the Elkhart County Sheriff's Department. The registration form contained spaces for Harris to provide his "E-mail/Chat room/Instant Messaging/Social Networking Site Names" but these were left blank. (State's Exhibit No. 2 p. 1). The last page of the form contains a preprinted affirmation and series of acknowledgements. The affirmation provided that Harris had truthfully answered the form under penalties of perjury. The acknowledgements included a warning that persons convicted of certain crimes, including child molesting, "may be prohibited from communicating via chat rooms, instant messaging or social networking sites in which persons under the age of 18 are allowed to access or use. Violation is a Class A [m]isdemeanor for the first offense and [Class] D [f]elony for each and every one thereafter." (State's Exh. No. 2 p. 3). Harris's signature appears on the last page of the form and alongside the date of December 2, 2008. On the same page, witness signatures dated December 2, 2008, March 2, 2009 and June 1, 2009 also appear.

Detective Brian Holloman of the Elkhart County Sheriff's Department (Detective Holloman) began working with the county sex offender registry in May 2006 and has been "[s]olely running it since July of 2006" and oversees the county's average of 400 sex offenders. (Transcript p. 79). In June 2009, Detective Holloman received

3

information that Harris "had a MySpace profile" and began investigating. (Tr. p. 86). Detective Holloman went to the MySpace website and found Harris's profile page with a user name of "filmmaker 54." The profile page contained Harris's photograph, biographical information, interests, and listed his marital status as single. In response to a subpoena, MySpace, Inc. provided Detective Holloman with account information: the account had been created on May 5, 2009 and was registered in Harris' name along with an America Online, Inc., (AOL) email address of filmmaker54@aol.com.

A subpoena was thereafter sent to AOL, which provided Detective Holloman with account information for "filmmaker54." The account information included a list of associated "screen names," including "MichaHarr5," "Mlharrismedia," Rjharrishome," as well as other screen names, which were apparently also used as email addresses. (State's Exh. No. 5 p. 5). The account was registered under the name of Harris's wife and paid for with her credit card. Her address and telephone number were the same as reported by Harris on his sex and violent offender registration form. The membership had been active since "03-01-15." (State's Exh. No. 5 p. 7).

On November 9, 2009, the State filed an Information charging Harris with failure to register as a sex offender, a Class D felony, I.C. § 11-8-8-17; and a sex offender internet offense, a Class A misdemeanor, I.C. § 35-42-4-12. On December 3, 2009, Harris provided an updated registration form, which listed the AOL email addresses but no social networking user names. Harris attached a note indicating that he had provided

4

this information under protest and without admitting that he had used or intended to use these email addresses.

On May 26, 2010, Harris filed a petition for relief from retroactive application of I.C. §§ 11-8-8-8; -17; and § 35-42-4-12 alleging primarily as applied *ex post facto* violations under the Indiana Constitution. On September 7, 2010, Harris, by counsel, filed a motion to dismiss all charges based on *ex post facto* and free speech violations. On September 29, 2010, the trial court held a hearing on the motions and subsequently denied them on October 21, 2010.

On January 23, 2012, a jury trial was held. Harris was found guilty as charged on both Counts. On February 27, 2012, the trial court sentenced Harris to three years' incarceration at the Department of Correction on Count I with a concurrent one year sentence on Count II.

Harris now appeals. Additional facts will be provided as necessary.

DISCUSSION AND DECISION

I. *First Amendment*

Harris contends that his convictions under I.C. §§ 11-8-8-17 and 35-42-4-12 violate the First Amendment to the United States Constitution. The First Amendment provides in relevant part that "Congress shall make no law ... abridging the freedom of speech." U.S. Const., Amdt. 1. The First Amendment is applicable to the states via the Fourteenth Amendment. *Shuger v. State*, 859 N.E.2d 1226 (Ind. Ct. App. 2007), *trans. denied*.

Harris makes essentially two arguments that the statutes violate his First Amendment rights.[1]  Regarding I.C. §11-8-8-8 and -17, he argues that anonymity is protected under the First Amendment and the disclosure requirements constitute an involuntary relinquishment of his anonymity thereby violating the First Amendment.[2]  His argument is more straightforward regarding I.C. § 35-42-4-12.  Harris argues that by banning his use of social networking websites accessible by persons under the age of eighteen, the State has impermissibly restricted his First Amendment right to free expression, whether political, religious, commercial, or personal.

Both parties characterize the statutes at issue as content neutral.  Government regulation of expressive activity is content neutral so long as it is justified without reference to the content of the regulated speech.  *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989).  "A law is content neutral if it regulates only the time, place, or manner of speech irrespective of content."  *Shuger*, 859 N.E.2d at 1232.  The appropriate

---

[1] As a threshold matter, we ascertain the nature of these challenges.  As the State points out, Harris's brief contains lengthy argument citing language applicable to both facial and as applied challenges to the constitutionality of the statutes.  A facial challenge to the constitutionality of a statute requires the challenging party to demonstrate that there are no set of circumstances under which the statute can be constitutionally applied.  *See Doe v. Town of Plainfield*, 893 N.E.2d 1124, 1129 (Ind. Ct. App. 2008), *trans. denied*.  An 'as-applied' challenge asks only that the reviewing court declare the challenged statute or regulation unconstitutional on the facts of the particular case.  *Dowdell v. City of Jeffersonville*, 907 N.E.2d 559, 564 (Ind. Ct. App. 2009), *trans. denied*.  While Harris's arguments often move back and forth between different concepts and standards of review, they, more often than not, recite that both statutes are unconstitutional as applied to him.

[2] Although Harris asserts that both I.C. § 11-8-8-8 and -17 are the source of the alleged violation, as the State points out, I.C. § 11-8-8-17 merely criminalizes the failure to provide required information; the requirement to provide email addresses and internet identifiers is contained in I.C. § 11-8-8-8(a)(7).  Thus, the inquiry into the constitutionality of Harris's anonymity claim is better understood as a challenge to I.C. § 11-8-8-8(a)(7) only.

6

constitutional test for a content neutral regulation is "whether it is narrowly tailored to

serve a significant governmental interest while leaving open ample alternative channels

for communication of the information." *State v. Economic Freedom Fund*, 959 N.E.2d

794, 802 (Ind. 2011).    The State has the burden of proof.  *See Turner Broad. Sys., Inc. v.*

*FCC*, 512 U.S. 622, 664 (1994).

## B.  *I.C. § 11-8-8-8(a)(7)*

### 1.  *Statute at Issue*

Indiana's Sex Offender Registration Act (INSORA), codified at I.C. ch. 11-8-8,

requires persons convicted of a sex or violent offense to register with and report to local

law enforcement.  I.C. §§ 11-8-8-4; -14.  Sex offenders must fulfill a number of

obligations, including providing personal information.  *See* I.C. § 11-8-8-8.  Harris is a

sexually violent predator and therefore must register and provide information under I.C. §

11-8-8-8.  *See Lemmon v. Harris*, 949 N.E.2d 803, 804-09 (Ind. 2011).  Subsection (a)(7)

requires offenders to provide certain personal information pertaining to the Internet:

> Any electronic mail address, instant messaging username, electronic chat
> room username, or social networking web site username[3] that the sex or
> violent offender uses or intends to use.

---

[3] Each of the foregoing terms is further defined by statute.  User names, whether for an electronic chat room, instant messaging, or social networking web site, refer to identifiers enabling either communication over the internet in real time using typed text or the creation, use, or modification of a social networking website.  *See* I.C. §§ 11-8-8-1.2; -1.6; -1.8.   A social networking web site is defined in I.C. § 35-42-4-12.  An email address refers to "a destination, commonly expressed as a string of characters, to which electronic mail may be sent or delivered."  I.C. § 11-8-8-1.4.

I.C. § 11-8-8-8(a)(7). Failure to register is punishable as a Class C or D felony under I.C. § 11-8-8-17. Failure to register includes not only a knowing or intentional "material misstatement" but also an omission of information when registering. I.C. § 11-8-8-17(a)(3).

Harris describes himself as a political activist who is vehemently opposed to sex offender registry and related laws. He cites newspapers, government websites, online forums and attorney websites as examples of websites requiring an email address as a prerequisite to communicate. He alleges that although he has spoken out publicly about his concerns; however, "because of his business interests, personal safety concerns for he [sic] an[d] his family and to avoid retaliation, and his tenuous situation as a person required to register as a sex offender, there are times when it is prudent for [him] to comment or speak anonymously." (Appellant's Br. p. 14). By requiring disclosure of his email addresses, Harris argues that I.C. § 11-8-8-8(a)(7) prohibits "true anonymity of speech since [Harris] is required to give the very persons or organizations he may be speaking out against the identifiers he would otherwise be able to use with anonymity (in the public forum[)]." (Appellant's Br. p. 14). Harris therefore contends that "it is impossible for [him] to respond anonymously to online newspaper articles and to participate anonymously in online political forums," and creates "a substantial burden on his right to speak." (Reply Br. p. 3).

The State argues that I.C. § 11-8-8-8(a)(7) does not implicate the First Amendment. Specifically, the statute's registration requirement does not prohibit Harris

8

from speaking and "places no limits whatsoever on a registrant's use of the internet." (Appellee's Br. p. 12). In the State's view, the registration requirement does not compel Harris to speak, nor does it restrict him from expressing his views. The State also argues that Harris can communicate anonymously by creating a blog to express his views.

## 2. *Application*

In *Doe v. Shurtleff*, 628 F.3d 1217 (10th Cir. 2010), *cert. denied*, 131 S.Ct. 1617 (2011), the Tenth Circuit considered a challenge to Utah's sex offender registry laws requiring the disclosure of the registrant's email address and internet identifiers. Similar to I.C. § 11-8-8-8(a)(7), the Utah statute at issue required disclosure of internet identifiers, which included "electronic mail, chat, instant messenger, social networking, or similar name used for Internet communication." *Id.* at 1221 n.1. Among other claims, Doe alleged that the Utah registration law violated his First Amendment right to engage in anonymous speech by chilling "any anonymous criticisms of oppressive laws or state practices he might otherwise make via the internet." *Id.* at 1225. The Tenth Circuit, however, concluded that the law constituted a content neutral burden on speech because it "says nothing about the ideas of opinions that Mr. Doe may or may not express, anonymously or otherwise" and did not unnecessarily impede Doe's First Amendment right of speech.[4] *Id.* at 1223-225.

---

[4] The *Shurtleff* court employed a narrowing construction of the Utah statute to conclude that it precluded "unrestricted dissemination information to the general public." *Shurtleff*, 628 F.3d at 1224-225. In Indiana, sex offender registry information appears on an internet website. *See* I.C. § 36-2-13-5.5. This includes sex offender email addresses and user names. *See* I.C. § 36-2-13-5.5(b)(3). However, Harris

We first examine whether the statute serves a significant government interest. *See Economic Freedom Fund*, 959 N.E.2d at 802. INSORA, of which I.C. § 11-8-8-8(a)(7) is a part, "undoubtedly advances a legitimate, regulatory purpose in that it promotes public safety" and protects "the public from repeat offenders." *Lemmon*, 949 N.E.2d at 812. Though disputing sex offender recidivism rates, Harris concedes that as originally conceived, the registry is "a tool to assist law enforcement [to] quickly [identify] potential abductors should a child go missing." (Appellant's Br. p. 20). We therefore conclude that I.C. § 11-8-8-8(a)(7) serves a significant governmental interest.

The narrowly tailored requirement is satisfied so long as the regulation promotes a substantial government interest that would be achieved less effectively absent the regulation. *Ward*, 491 U.S. at 799. Here, the statute requires disclosure of email addresses as well as instant messaging and chat room user names that the registrant uses or intends to use. I.C. § 11-8-8-8(a)(7). Absent the requirement, the State undoubtedly has a lessened ability to investigate a registrant's online whereabouts.

Regarding the chilling effect providing identifiers may have on his right to speak anonymously, we observe that disclosure of online identifiers does not "unnecessarily interfere with his First Amendment freedom to speak anonymously." *Shurtleff*, 628 F.3d at 1225. This is so because "the First Amendment protects anonymity where it serves as a catalyst for speech." *Id*. Harris does not argue that he is forced to reveal his identity as

does not allege that any chilling effect on his First Amendment rights arises from this public dissemination requirement.

10

a prerequisite for expression. Although it is possible for the State to be aware of Harris's identity at the time of his speech, "this possibility does not impose a constitutionally improper burden on speech." *Id.* Consequently, we reject Harris's claim that I.C. § 11-8-8-8(a)(7) chills his expression under the First Amendment.[5]

## C. *Ind. Code § 35-42-4-12*

### 1. *Statute at Issue*

Sexually violent predators and certain sex or violent offenders are outright banned from using those social networking sites, instant messaging programs, or chat room programs that are accessible by persons under the age of eighteen. I.C. § 35-42-4-12. Harris, by virtue of his status as a sexually violent predator, is subject to the statute's restrictions. *See* I.C. § 35-42-4-12(b)(1). Those restrictions include the following:

> (e) A person described in subsection (b) who knowingly or intentionally uses:
> (1) a social networking web site; or
> (2) an instant messaging or chat room program;
>
> that the offender knows allows a person who is less than eighteen (18) years of age to access or use the web site or program commits a sex offender Internet offense, a Class A misdemeanor.

I.C. § 35-42-4-12(e).

Subsections (c) and (d) define instant messaging or chat room programs and social networking web sites. An "instant messaging or chat room program" refers to a software program that "allows two (2) or more members or authorized users to communicate over

---

[5] For the purposes of foregoing analysis, we have assumed that email permits anonymity. *Cf. Howell v. State*, 921 N.E.2d 503, 505 n.2 (Ind. Ct. App. 2009) ("Each computer attached to the internet has an Internet protocol address […] which identifies its location to the Internet network.").

the Internet in real time using typed text." I.C. § 35-42-4-12(c). The software program must require registration or creation of "an account, user name or password to become a member or registered user." I.C. § 35-42-4-12(c). A "social networking web site" is an Internet web site that "facilitates the social introduction between two (2) or more persons;" "allows a member to create a web page or personal profile;" and "provides a member with the opportunity to communicate with another person." I.C. § 35-42-4-12 (d)(1),(3-4). The social networking web site "requires a person to register or create an account, user name, or a password" in order to "become a member of the web site and to communicate with other members." I.C. § 35-42-4-12(d)(2). Electronic mail and message board programs do not constitute instant messaging, chat room programs, or social networking web sites. I.C. § 35-42-4-12(c)-(d).

Harris contends that his use of social networking web sites is protected under the First Amendment. By convicting him for using certain social networking web sites, Harris argues that he has been punished for engaging in constitutionally protected expressive activity. The State argues that the internet use restriction is narrowly tailored to serve the compelling interest in protecting minors from online solicitations and that ample alternatives exist for Harris to express his views. The State asserts that the sex offender internet offense statute is narrowly tailored to promote its compelling interest as it "removes predators from online sites where they have easy access to a large pool of potential victims." (Appellee's Br. p. 18). However, the State concedes that "the statute will potentially prohibit a considerable amount of speech that does not involve

12

interactions with minors at all." Nevertheless, the State contends that the statute is narrowly drawn because "there is no other workable effective measure to deter and prevent the online sexual solicitations of minors" and only certain types of sex offenders are restricted from using web sites or services that pose "the greatest risk of online exploitation." (Appellee's Br. p. 18).

## 2. *Doe v. Marion County Prosecutor*

After Harris filed his appeal, the Seventh Circuit issued its decision in *Doe v. Marion County Prosecutor*, 2013 WL 238735 (7th Cir. Jan. 23, 2013), which addresses the constitutionality of I.C. § 35-42-4-12 under the First Amendment. *Doe* involved a permanent injunction against the enforcement of I.C. § 35-42-4-12 brought by:

> all Marion County[, Indiana] residents required to register as sex or violent offenders pursuant to Indiana law who are not subject to any form of supervised release and who have been found to be a sexually violent predator under Indiana law or who have been convicted of one or more of the offenses noted in [I.C.] § 35-42-4-12(b)(2) and who are not within the statutory exceptions noted in [I.C.] § 35-42-4-12(a).

*Id*. at *1. The lower court decision upheld the constitutionality of the statute, concluding that I.C. § 35-42-4-12 was a content neutral regulation, narrowly tailored to serve a significant governmental interest and left ample alternative channels for communication open.

The Seventh Circuit reversed and remanded with instructions to issue the injunction. *Id*. at *9. It concluded that I.C. § 35-42-4-12 was a content neutral restriction "because it restricts speech without reference to the expression's content." *Id*. at *3. As a result, it applied the *Ward* test to determine whether the statute is "narrowly tailored to

13

serve a significant governmental interest" and "leave[s] open ample alternative channels for communication of the information." *Id*. (quoting *Ward*, 491 U.S. at 791). Although the State had a justified interest in protecting minors from "improper sexual communication," the Seventh Circuit concluded that I.C. § 35-42-4-12 was not narrowly tailored to serve that interest. *Id*.

The *Doe* court first considered the constitutionality of complete bans on expressive activity. Complete bans can be deemed narrowly tailored "but only if each activity within the proscription's scope is an appropriately targeted evil." *Id*. (quoting *Frisbee v. Schultz*, 487 U.S. 474, 485 (1988)). Further, complete bans may be narrowly tailored where the "substantive evil […] is not merely a possible by-product of the activity, but is created by the medium of expression itself." *Id*. (quoting *City of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 810 (1984)). Thus, where each communication is an evil and the medium itself represents the evil, complete bans on expression have been upheld on First Amendment grounds.

In contrast, where the state has alternative means to combat the evil, the *Doe* court noted that such bans have been held invalid. It cited *Schneider v. Town of Irvington*, 308 U.S. 147, 162-64 (1939) and *Martin v. City of Struthers*, 319 U.S. 141, 147 (1943) in support. In these cases, the Supreme Court struck down regulations against handbill distribution (*Schneider*) and door-to-door solicitations (*Martin*). The *Doe* court found that in *Schneider* "the expressive activity–handing paper to people in public–did not produce the evil. The recipients' incidental decision to drop the paper did. As such, the

14

[Supreme] Court required the cities to prevent littering by enforcing littering laws." *Id*. at *4. Similarly, the *Doe* court reasoned that the solicitation ban in *Martin* failed because each householder could avail themselves of traditional legal methods to restrict the solicitations. *See id.*

The *Doe* court concluded that I.C. § 35-42-4-12 was not narrowly tailored in light of these precedents. Under the *Frisbee* and *City of Los Angeles* rationale, the court noted the State's concession that "there is nothing dangerous about Doe's use of social media as long as he does not improperly communicate with minors" and there was "no disagreement that illicit communication comprises a minuscule subset of the universe of social network activity." *Id*. Under the *Schneider* and *Martin* rationale, the *Doe* court concluded that the State already criminalized illicit expression with minors. In particular, the court noted that I.C. § 35-42-4-6 punishes child solicitation and I.C. § 35-42-4-13 punishes inappropriate communication with a child. These statutes "have enhanced penalties for using a computer network." *Id*. As a result, the *Doe* court concluded that these statutes "better advance Indiana's interest in preventing harmful interaction with children" and are thus "neither over nor under-inclusive" as it found I.C. § 35-42-4-12 to be. *Id*. Concluding that I.C. § 35-42-4-12 was not narrowly tailored, the court did not consider whether ample alternative means of communication existed. *Id*. at *3.

### 3. *Application to Harris*

The parties here agree and the *Doe* court concluded that I.C. § 35-42-4-12 is content neutral. Guided by the Seventh Circuit's decision in *Doe*, we therefore apply the

15

*Ward* test to determine whether I.C. § 35-42-4-12 meets the intermediate level of scrutiny applicable to content neutral regulations. *See id.* Here, the State has argued that a) it has a substantial state interest in protecting minors from harmful communication; b) I.C. § 35-42-4-12 is narrowly tailored to serve that interest; and c) ample alternatives exist for Harris to express himself.

Aspects of this case illustrate the breadth of the applicable state interest. Although Harris cites to studies disputing the current rates of sex offender recidivism, we cannot say that the State's assertion that existence of online predation and high sex offender recidivism has lost its force. Further, we cannot ignore that Harris is a sexually violent predator whose conduct in fact posed the very risk to minors that the State seeks to restrict from occurring through the Internet. As a parolee, Harris violated the terms of his parole by soliciting teenage male actors for his movies via the Internet. *See Harris v. State*, 836 N.E.2d 267, 271-72 (Ind. Ct. App. 2005), *trans. denied*. As we noted in that case:

> [T]he limitation on Harris's access to the Internet is reasonably related to his successful reintegration into the community. By imposing the restriction on Harris's use of the Internet, the [parole board] was legitimately concerned that a released child molester's unfettered access to a computer might result in additional criminal conduct. This is so because the Internet, or Cyberspace, defies boundaries and offers unlimited access to people, including children. *See, e.g., U.S. v. Zinn*, 321 F.3d 1084, 1093 (11th Cir. 2003) (noting that some child molesters reach their victims through the Internet), *cert. denied*, 540 U.S. 839 [(2003)]. This access is often subtle to children—as it comes in the form of friendship or, in Harris's case, prospective employment—and undetected by parents. Restricting a child molester's access to this communication medium, therefore, serves to protect the public and to prevent future criminal activity.

16

*Id*. at 275. We conclude that under these circumstances the State has sufficiently demonstrated that it has significant interests associated with the regulation of sex offender internet usage.

However, the State's argument on narrow tailoring, an issue under which it has the burden, fails under *Doe*. *See Turner*, 512 U.S. at 664. Indeed, each component of its narrow tailoring argument fails. First, the State concedes that I.C. § 35-42-4-12 prohibits "a considerable amount of speech that does not involve [harmful] interactions with minors at all." (Appellee's Br. p. 18). This fails under *Frisbee* and *Schneider* because each communication is concededly not an evil. Second, the State argues that certain types of social networking web sites (*i.e.*, those accessible to minors) provide easy access to a large pool of victims. Yet, this is an insufficient argument to show that the medium rather than the potential communication causes harm. Third, by arguing that registrants are excluded, this assumes that all registered sex offenders will potentially engage in illicit communication. This argument fails under *Schneider* and *Martin* because the State has already criminalized such communication. Fourth, the State posits that use of the same socializing sites used by minors inevitably leads to online solicitation. This argument fails under *Turner* because the State has not shown how the ban alleviates such harm in a direct and material way. The sole remaining justification for the statute is based on the administrability exception in *Hill*. Here, the State's efforts are insufficient; it argues that there is no other workable effective measure to deter and prevent the online sexual solicitation of minors. Lacking a detailed argument sufficient to pass muster

17

under *Hill*, we conclude that the State has not successfully invoked the administrability exception under these circumstances.

Nevertheless, an argument can be made under *City of Los Angeles* and *Hill* that the media of social networking sites or instant messaging programs constitute an evil and also present difficulties in carving a rule that covers precisely the evil contemplated by the General Assembly. The *Doe* opinion acknowledges this as a possible argument:

> Despite the infirmity of the statute in this case, we do not foreclose the possibility that keeping certain sex offenders off social networks advances the state's interest in ways distinct from the existing justifications. For example, perpetrators may take time to seek out minors they will later solicit. This initial step requires time spent on social networking websites before the solicitation occurs. […. Further,] a law could apply to certain persons that present an acute risk—those individuals whose presence on social media impels them to solicit children. Currently, the state presents no evidence that covered individuals present this sort of risk.

*Id*. at * 7.

It is conceivable that the social networking medium possesses qualities allowing us to conclude that the substantive evil is generated by the medium itself. *See A.B. v. State*, 885 N.E.2d 1223, 1224-225 (Ind. 2008)(describing features of MySpace). Social networking websites use endorsements from trusted sources to facilitate social introductions thereby overcoming a bias against unknown persons, products, or services. It is possible that prohibiting those certain sex offenders from using such online utilities reduces the risk that unsupervised communication with an unsuspecting minor may, through development of bonds of trust and friendship with a predator – a bond that may ultimately lead to the minor being lured and groomed. Moreover, the nature of social

18

networking web sites may present obstacles justifying the administrability exception under *Hill*. Yet, without detailed explanations on how social networking web sites operate, the State's argument is not only insufficient to establish justification under *City of Los Angeles* and *Hill*, but also does not fall within the hypothetical, narrowly drawn statute described in *Doe*.

A lower federal court's interpretation of Indiana law is not binding on an Indiana state court. *See League of Women Voters of Indiana, Inc. v. Rokita*, 929 N.E.2d 758, 763 (Ind. 2010). We note that the parties in this case and remedy afforded differ from *Doe*. The *Doe* court permanently enjoined Marion County prosecutors from enforcing I.C. § 35-42-4-12 against sex offenders not on supervised release. Although Harris was last released from parole in December 2008, he was tried and convicted in Elkhart County. Nevertheless, we conclude that the State's proffered narrow tailoring justification for I.C. § 35-42-4-12 is unsustainable in light of the *Doe* opinion.

In reaching our determination, we emphasize the distinction between First Amendment overbreadth and 'as-applied' challenges. The First Amendment overbreadth doctrine allows an individual to attack the constitutionality of a statute that applies to protected speech, even if the conduct by the challenging party is clearly unprotected. *Logan v. State*, 836 N.E.2d 467, 472 (Ind. Ct. App. 2005). The remedy applicable to an overbreadth challenge is a declaration that the statute is null and void. *See U.S. v. Williams*, 553 U.S. 285, 292 (2008). However, overbreadth challenges in criminal cases are discouraged. *Sabri v. U.S.*, 541 U.S. 600, 609-10 (2004). More importantly, Harris is

19

accused of committing the acts he claims constitute protected speech. Thus, overbreadth analysis is inapplicable and Harris's challenge is properly viewed as an as-applied challenge. *See LaRose v. State*, 820 N.E.2d 727, 731 n.4 (Ind. Ct. App. 2005), *trans. denied*. We therefore conclude that I.C. § 35-42-4-12 is unconstitutional as applied to Harris and reverse his conviction under the statute.[6] *Compare Grody v. State*, 278 N.E.2d 280, 285 (Ind. 1972) *with Smith v. State*, 413 N.E.2d 652, 653 (Ind. Ct. App. 1980).

## II. *Free Expression under the Indiana Constitution*

We next review Harris's claim that I.C. § 11-8-8-8 violates the Free Expression clause of the Indiana Constitution. Article 1, Section 9 states in relevant part that "[n]o law shall be passed, restraining the free interchange of thought and opinion, or restricting the right to speak, write, or print, freely, on any subject whatever […] but for the abuse of that right, every person shall be responsible."

### A. *Standard of Review*

We apply a two-step inquiry when reviewing the application of a statute under the Indiana Constitution. *See Shoultz v. State*, 735 N.E.2d 818, 826 (Ind. Ct. App. 2000), *trans. denied*. A claimant must first demonstrate that the State's action has, in the concrete circumstances of the case, restricted his or her opportunity to engage in expressive activity. *Whittington v. State*, 669 N.E.2d 1363, 1367 (Ind. 1996). While

---

[6] By concluding that I.C. § 35-42-4-12, as applied, violates the First Amendment, we do not reach Harris's challenges to the statute under the Article 1, Sections 9 and 23 of the Indiana Constitution. Further, our holding obviates the need to review Harris's argument regarding the statutory defense provided by I.C. § 35-42-4-12(f).

"speaking, writing, or printing, freely on any subject whatever" are protected, the defendant must show that the State has imposed "a direct and significant burden on a person's opportunity to speak his or her mind, in whatever manner the speaker deems most appropriate." *Id*. at 1368. Second, the defendant has the burden to show that the State's regulation of the expression is not rational. *Logan*, 836 N.E.2d at 473. In other words, the defendant retains the burden to prove "that the State could not reasonably conclude that the restricted expression was an abuse." *Whittington*, 669 N.E.2d at 1369.

If the expressive activity is political in nature, the State must demonstrate that it did not materially burden the claimant's opportunity to engage in political expression. *Id*. "Expressive activity is political ... if its point is to comment on government action, whether applauding an old policy or proposing a new one, or opposing a candidate for office or criticizing the conduct of an official acting under the color of law." *Whittington v. State*, 669 N.E.2d at 1363, 1370 (Ind. 1996). In contrast, where an individual's expression focuses on the conduct of a private party – including the speaker himself or herself – it is not political. *Id*. If the expression, viewed in context, is ambiguous, a reviewing court should find that the claimant has not established that it was political and should evaluate the constitutionality of any state-imposed restriction of the expression under a rationality review. *Id*.

### B. *Ind. Code § 11-8-8-8(a)(7)*

Harris argues that registration of his email address "curtails any anonymity that he may wish to use […] thereby imposing a material burden upon his free speech and

exchange of ideas." (Appellant's Br. p. 15). The State responds that I.C. § 11-8-8-8(a)(7) does not restrict expressive activity and even if it is a restriction, the registration requirement is a response to an abuse of the right to speak.

Although Harris contends that the statute has restricted his political expression, he must show that the "actual operation of the statute at issue" restricted his expression. *Price*, 622 N.E.2d at 958. He has not met this burden. Harris was charged with failing to provide those email addresses he used or intended to use. The registration requirement in I.C. § 11-8-8-8(a)(7) does not restrict his ability to use email, nor does it limit his use of social networking websites or instant messaging and chat room platforms.

Even assuming that Harris has shown the statute to be a restriction on his expressive activity, Harris has not met his burden regarding the second prong, *i.e.*, that the State could not reasonably conclude that the restricted expression was an abuse. First, to the extent that Harris argues that the registration requirement restricts his anonymous expression, we have previously noted that the right of anonymity expression applies when anonymity is a catalyst for speech. *See Shurtleff*, 628 F.3d at 1225. Providing registration information therefore does not curtail his ability to express anonymously in the first instance. Although Harris argues that "no abuse was alleged" by the State as a result of Harris's failure to register the email addresses and user names, we find this argument insufficient to meet his burden. (Appellant's Br. p. 22). The only speech involved here is identification information; Harris was not convicted for any expression extending beyond that. To the extent that Harris's activity was expressive, the State

22

contends that it was an abuse of his right to expression, insofar as it constitutes a "threat to public safety and the general welfare" falling "within the police power of the State." (Appellee's Br. p. 23). As the supreme court has noted, INSORA promotes public safety and "registration systems are a legitimate way to protect the public from repeat offenders." *Wallace v. State*, 905 N.E.2d 371, 383 (Ind. 2009). Accordingly, under these facts, Harris's conviction under I.C. § 11-8-8-8(a)(7) does not contravene his right to free expression as guaranteed by Article I, Section 9 of the Indiana Constitution.

III. *Ex Post Facto Provision of the Indiana Constitution*

Harris's final constitutional challenge is that I.C. § 11-8-8-8 is unconstitutional as applied to him in that the statute is an *ex post facto* law and therefore violates the Ex Post Facto Clause of the Indiana Constitution.[7] The Indiana Constitution states that "No ex post facto law […] shall ever be passed." Ind. Const. art 1, § 24. This provision forbids, in pertinent part, the passage of any law "which imposes a punishment for an act which was not punishable at the time it was committed; or imposes additional punishment to that then prescribed." *Healey v. State*, 969 N.E.2d 607, 611 (Ind. Ct. App. 2012), *trans. denied* (*quoting from Weaver v. Graham*, 450 U.S. 24, 28 (1981)). The underlying purpose of the Ex Post Facto Clause is to give effect to the fundamental principle that persons have a right to fair warning of that conduct which will give rise to criminal penalties. *State v. Pollard*, 908 N.E.2d 1145, 1149 (Ind. 2009).

---

[7] Harris's *ex post facto* challenge is based exclusively on the Indiana Constitution and not the United States Constitution.

In *Wallace*, the supreme court concluded that *ex post facto* claims under the Indiana Constitution are evaluated by application of the "intent-effects" test. *Pollard*, 908 N.E.2d at 1149. Under the first prong of this test, we determine what type of scheme the legislature intended the statute to establish. *Id.* If the legislature's intention was to impose punishment, the inquiry ends and an *ex post facto* violation is found. *Id.* If, however, the legislature's intention was regulatory or civil in nature, then the court must move to the second prong of the inquiry to determine whether the effects of the statute are so punitive as to transform the regulatory scheme into a criminal penalty. *Id.*

Harris's *ex post facto* challenge fails. Although Harris alleges that I.C. § 11-8-8-8 constitutes an *ex post facto* violation in the heading of his brief and the last sentence of his argument, he makes no attempt to analyze the statute under the intents-effects test. As a result, we find that Harris has failed to make a cogent argument and has therefore waived this particular claim. *See Wingate v. State*, 900 N.E.2d 468, 475 (Ind. Ct. App. 2009).[8]

### IV. *Sufficiency of the Evidence*

Harris also argues that because he personally did not use or intend to use certain unregistered email addresses, he complied with the I.C. § 11-8-8-8(a)(7) requirement that

---

[8] Harris also contends that his convictions violate Resolution from the United Nations Human Rights Council regarding free speech on the Internet. See H.R.C. Res. 20/L.13, U.N. Doc. A/HRC/20/L.13 (June 29, 2012. However, Harris cites to no authority to demonstrate that this resolution has binding authority and further fails to make an argument how the statutes violate the resolution. Accordingly, we deem this argument waived for failure to make a cogent argument. *See Wingate*, 900 N.E.2d at 475.

a sex or violent offender register those email addresses the offender uses or intends to use. We characterize this argument as a sufficiency of the evidence claim.

In order to convict Harris of failing to register under I.C. § 11-8-8-17, as a Class D felony, the State was required to prove beyond a reasonable doubt that Harris, a sex offender, acting with the culpability required for commission of the crime:

> (1) fail[ed] to register when required to register under this chapter;
> (2) fail[ed] to register in every location where the sex or violent offender is required to register under this chapter;
> (3) ma[de] a material misstatement or omission while registering as a sex or violent offender under this chapter[.]

I.C. § 11-8-8-17(a). The statute requires that the sex or violent offender knowingly or intentionally commit the violation for culpability. I.C. § 11-8-8-17.

When reviewing the sufficiency of the evidence to support a conviction, we will consider only the probative evidence and reasonable inferences supporting the verdict. *Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007). We will affirm the conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. *Id*. Because knowledge is the mental state of the actor, it may be provided by circumstantial evidence and inferred from the circumstances of each case. *Taylor v. State*, 975 N.E.2d 392, 394 (Ind. Ct. App. 2012), *trans. denied*.

Harris does not dispute that he did not list the email addresses when he updated his registration on June 1, 2009. However, Harris argues that he was aware of the requirement to register and as a result he never personally used or intended to use the unregistered email addresses or social networking website user names. Instead, he claims

25

that the unregistered email addresses and social networking usernames were registered under his wife's name, used in connection with the promotion of his services as an actor and filmmaker, and part of the "brand name" of his business carried out through his corporation. According to Harris, in such case, the law does not require him to register the email addresses or social networking user names.

At trial, the State offered screen shots of Harris's MySpace profile page and his IndianaActors.com profile page. The MySpace profile page contained Harris's photograph, a narrative of his likes and dislikes, listed his marital status as single, and a user name of 'filmmaker 54.' Further, the State provided records from MySpace showing that the profile page was created on May 5, 2009, and an associated email address of 'filmmaker1954@aol.com.' The Indiana Actors.com profile page contained photographs of Harris, listed an email address of 'michaharr5@aol.com,' and stated "[c]ontact Michael L. Harris directly if you are interested in his talents." (State's Exh. No. 6). Harris did not register either email address until December 3, 2009.

Based on the foregoing, we deem Harris's arguments merely a request to reweigh the evidence. We decline to do so. There is sufficient evidence from which the jury could infer that Harris used or intended to use such email addresses and failed to register these email addresses on June 1, 2009. We therefore reject Harris's sufficiency of the evidence claim.[9]

---

[9] Harris makes two additional arguments that we do not consider. First, Harris alleges that the trial court abused its discretion by denying his motion in limine regarding criminal history evidence. It is well settled that the denial of a motion in limine does not preserve error and that the failure to make a timely

Based upon the foregoing, we conclude that Harris's conviction under Ind. Code § 35-42-4-12 violates the First Amendment to the United States Constitution and reverse his conviction under that statute. However, Harris's constitutional challenges to I.C. § 11-8-8-8(a)(7) under the First Amendment as well as Article 1, Sections 9 and 24 of the Indiana Constitution fail. We also conclude that the State produced sufficient evidence to support Harris's conviction under I.C. § 11-8-8-17.

Affirmed in part, reversed in part.

BAILEY, J. concurs

CRONE, J. concurs in part and concurs in result in part with separate opinion

---

objection to the evidence at trial waives the error on appellate review. *See Warren v. State*, 757 N.E.2d 995,998 (Ind. 2001). Here, Harris did not object when the State introduced evidence of his child molesting conviction. Second, Harris argues that the State committed prosecutorial misconduct during its closing argument. Specifically, he contends that the State improperly referred to his prior child molesting conviction, expressed personal opinions that Harris sought to be portrayed as a victim, and called Harris a liar. However, Harris did not object to these remarks, request an admonishment, or make a motion for a mistrial. His argument is therefore waived. *See Cooper v. State*, 854 N.E.2d 831, 835 (Ind. 2006). Further, where a claim of prosecutorial misconduct has not been properly preserved, the defendant must establish the grounds for the misconduct and the additional grounds for fundamental error. *Id*. Fundamental error is an extremely narrow exception that allows a defendant to avoid waiver of an issue. *Id*. However, Harris makes no attempt to argue that fundamental error occurred.

# IN THE
## COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| MICHAEL L. HARRIS, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 20A04-1204-CR-225 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

**CRONE, Judge, concurring in part and concurring in result in part**

I agree with the majority that the State produced sufficient evidence to support Harris's conviction under Indiana Code Section 11-8-8-17; that he waived his ex post facto claim as to Indiana Code Section 11-8-8-8; that he waived his claim that his convictions violate the Resolution from the United Nations Human Rights Council; and that he waived his claims regarding the trial court's denial of his motion in limine and the prosecutor's alleged misconduct. I also agree that Indiana Code Section 11-8-8-8 is not

unconstitutional as applied to Harris under the First Amendment. As to the remaining issues, I respectfully concur in result.

Harris first contends that Indiana Code Sections 11-8-8-7, 11-8-8-17, and 35-42-4-12 are unconstitutional as applied to him under the First Amendment to the U.S. Constitution and Article 1, Section 9 of the Indiana Constitution. Like the majority, I agree with the State that Indiana Code Section 11-8-8-17 "merely makes it a crime to failure to register as required by law, which does not implicate" any constitutional free-speech provision, and thus his "constitutional arguments are properly directed toward the substance of the registration requirement, which is found in Section 11-8-8-8." Appellee's Br. at 9 n.5. As mentioned above, I agree with the majority that Indiana Code Section 11-8-8-8 is not unconstitutional as applied to Harris under the First Amendment. As for Harris's state constitutional argument, however, I would simply hold that he has failed to establish that the statute has actually restricted his expression and say nothing more on the subject.

As for Indiana Code Section 35-42-4-12, the majority acknowledges that the Seventh Circuit Court of Appeals recently addressed its constitutionality under the First Amendment in *Doe v. Marion County Prosecutor*, 705 F.3d 694 (7th Cir. 2013), but never quite gets around to saying that the court found the statute unconstitutional on its face. *See id.* at 695 ("We … hold that the law as drafted is unconstitutional. Though content neutral, we conclude that the Indiana law is not narrowly tailored to serve the

state's interest."). I acknowledge that we are not bound by the Seventh Circuit's holding and that *Doe* is both factually and procedurally distinguishable, but I see no reason to reinvent the wheel here and would reverse Harris's conviction under Indiana Code Section 35-42-4-12 based on Judge Flaum's persuasive analysis in that case. We need not address Harris's state constitutional argument here, but I would simply note that the protections of Article 1, Section 9 of the Indiana Constitution are at least equal to if not greater than those of the First Amendment.