# FOR PUBLICATION



ATTORNEY FOR APPELLANT:

**CORY A. SPREEN**
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**J.T. WHITEHEAD**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

GEORON HARRIS,                            )
                                         )
    Appellant-Defendant,            )
                                         )
        vs.                  )    No. 02A03-1402-CR-73
                                         )
STATE OF INDIANA,                         )
                                         )
    Appellee-Plaintiff.             )

APPEAL FROM THE ALLEN SUPERIOR COURT
The Honorable John F. Surbeck, Jr., Judge
The Honorable Robert E. Ross, Magistrate
Cause No. 02D04-1305-CM-2508

**October 21, 2014**

**OPINION - FOR PUBLICATION**

**BRADFORD, Judge**

**CASE SUMMARY**

Fort Wayne police responded to a dispatch of an armed individual who had pointed a gun at a female and located Appellant-Defendant Georon Harris, who matched the description in the dispatch, sitting in front of an apartment at 810 Oaklawn Court ("the Apartment"). As two police officers approached, they saw Harris remove a black handgun from his waistband, open the front door of the Apartment, place the gun on the floor just inside the door, and close the door. The officers could not see into the Apartment. After securing Harris, one of the officers opened the Apartment's door, reached inside, and retrieved the handgun from the floor. The State charged Harris with Class A misdemeanor carrying a handgun without a permit. Harris filed a motion to suppress the gun, which motion the trial court denied. Following trial, a jury found Harris guilty as charged, and the trial court sentenced him to 210 days of incarceration.

Harris contends that the entry into the Apartment to retrieve the gun violated his rights pursuant to the Fourth Amendment to the United States Constitution and Article I, Section 11 of the Indiana Constitution. This case calls upon us to examine the question of under what circumstances the presence of a firearm in the vicinity obviates the need to obtain a search warrant in order to seize it from a residence. Under the circumstances of this case, we conclude that the State has established that exigent circumstances relieved it of the need to obtain a search warrant. We also conclude that the seizure of the gun from the Apartment was reasonable pursuant to the Indiana Constitution.

**FACTS AND PROCEDURAL HISTORY**[1]

At approximately 11:00 p.m. on May 30, 2013, Fort Wayne Police Officers Benjamin Miller and Nicholas Lichtsinn, both in full uniform, were dispatched to a report of an armed individual who had pointed a gun at a female and who was driving a white Bonneville. The suspect was described as a "male black in a white shirt with braid dreadlocks." Tr. p. 28. Officer Lichtsinn had just seen a white Bonneville, so he returned to the area where he had seen it and observed a white Bonneville parked near the entrance to the Chapel Oaks apartments. The Bonneville was warm to the touch, and, as Officer Lichtsinn verified that nobody was inside the vehicle, he saw Harris, who matched the description of the armed individual, sitting in front of the Apartment. Meanwhile, Officer Miller had arrived. (Tr. 49). From approximately 100 to 120 feet away, the officers observed Harris stand, remove a black handgun from his waistband, open the door of the Apartment, place the gun on the floor inside, close the door, and sit down again. The door to the Apartment had no window, and the views through all of the windows were obscured by closed blinds. The officers approached Harris, ordered him to the ground, and handcuffed him. Officer Lichtsinn opened the Apartment's door, retrieved the handgun from the floor just inside, and, in doing so, "might have gone a step into [the Apartment]." Supp. Tr. p. 24. Officer Lichtsinn noticed a teenaged female sitting on a couch inside the Apartment, approximately five feet from the gun.

---

[1] There is no indication that either party incorporated the suppression record into the trial record. Both Harris and the State, however, rely on evidence collected at the suppression hearing. Under the circumstances, we shall treat the suppression record as effectively incorporated into the trial record.

On May 31, 2013, the State charged Harris with Class A misdemeanor carrying a handgun without a license. On August 20, 2013, Harris filed a motion to suppress evidence related to Officer Lichtsinn's entry into the Apartment. On October 1, 2013, following a hearing, the trial court denied Harris's motion to suppress. Following a trial held on January 30, 2013, a jury found Harris guilty as charged, and the trial court sentenced Harris to 210 days of incarceration.

## DISCUSSION

### Whether the Trial Court Abused Its Discretion in Admitting Evidence Found in the Apartment

Harris is appealing from the allegedly erroneous admission of the gun at trial. The admissibility of evidence is within the sound discretion of the trial court. *Curley v. State*, 777 N.E.2d 58, 60 (Ind. Ct. App. 2002), *trans. denied*. We will only reverse a trial court's decision on the admissibility of evidence upon a showing of an abuse of that discretion. *Id.* An abuse of discretion may occur if the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court, or if the court has misinterpreted the law. *Id.* The Court of Appeals may affirm the trial court's ruling if it is sustainable on any legal basis in the record, even though it was not the reason enunciated by the trial court. *Moore v. State*, 839 N.E.2d 178, 182 (Ind. Ct. App. 2005), *trans. denied*. We do not reweigh the evidence and consider the evidence most favorable to the trial court's ruling. *Hirshey v. State*, 852 N.E.2d 1008, 1012 (Ind. Ct. App. 2006), *trans. denied*. Harris contends that the admission of the gun found in the Apartment violates both the Fourth Amendment to the United States Constitution and Article I, Section 11 of the Indiana Constitution.

## I. Fourth Amendment

The Fourth Amendment to the United States Constitution provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." "The overriding function of the Fourth Amendment is to protect personal privacy and dignity against unwarranted intrusion by the State." *Schmerber v. California*, 384 U.S. 757, 767 (1966). "In *Wolf* [*v. People of State of Colorado*, 338 U.S. 25, 27 (1949) (overruled on other grounds by *Mapp v. Ohio*, 367 U.S. 643 (1961)] we recognized '(t)he security of one's privacy against arbitrary intrusion by the police' as being 'at the core of the Fourth Amendment' and 'basic to a free society.'" *Id.*

### Exigent Circumstances

The State argues, and Harris disputes, that the seizure of the gun from the Apartment was justified by exigent circumstances, which is a recognized exception to the warrant requirement of the Fourth Amendment:

> One exception allows police to dispense with the warrant requirement in the presence of exigent circumstances. The warrant requirement becomes inapplicable where the "'exigencies of the situation' make the needs of law enforcement so compelling that the warrantless search is objectively reasonable under the Fourth Amendment." *Mincey v. Arizona*, 437 U.S. 385, 393-94, 98 S. Ct. 2408, 2414, 57 L. Ed. 2d 290, 301 (1978). Among the exigencies that may properly excuse the warrant requirement are threats to the lives and safety of officers and others and the imminent destruction of evidence. *See Minnesota v. Olson*, 495 U.S. 91, 100, 110 S. Ct. 1684, 1690, 109 L. Ed. 2d 85, 95 (1990). Law enforcement may be excused from the warrant requirement because of exigent circumstances based on concern for safety as long as the State can prove that a delay to wait for a warrant would

5

> gravely endanger the lives of police officers and others. *Warden v. Hayden*, 387 U.S. 294, 298-99, 87 S Ct. 1642, 1646, 18 L. Ed. 2d 782, 787 (1967); *see also Geimer v. State*, 591 N.E.2d 1016, 1019 (Ind. 1992).

*Holder v. State*, 847 N.E.2d 930, 936-37 (Ind. 2006).

Under the circumstances of this case, we conclude that exigent circumstances justified Officer Lichtsinn's seizure of the handgun. Harris placed the handgun inside the Apartment, into which the police officers could not see. As such, the officers had no way of knowing if there was anybody in the Apartment who could have concealed or used the handgun to open fire on the police officers who were in the vicinity of the front door and porch. Moreover, any young children who happened to be in the Apartment would have had easy access to the handgun, placing them and others in obvious danger. Despite the fact that the officers had no positive indications that anybody was in the Apartment, we conclude that the extremely dangerous nature of the handgun and the potential for evidence tampering are sufficient to establish exigent circumstances. *See, e.g.*, *U.S. v. Webb*, 83 F.3d 913, 917 (7th Cir. 1996) (upholding warrantless search of car based on exigent circumstances when defendant tossed gun in trunk of car because gun could easily fire and was accessible to passersby). We conclude that the seizure of the gun did not run afoul of the Fourth Amendment.

## II. Article I, Section 11

Harris also contends that the seizure of the handgun was unreasonable under the Indiana Constitution. Article I, Section 11, of the Indiana Constitution provides that

> [t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search or seizure, shall not be violated; and no warrant shall issue, but upon probable cause, supported by oath or affirmation,

and particularly describing the place to be searched, and the person or thing to be seized.

The Indiana Supreme Court has noted that

> [w]hile almost identical in wording to the federal Fourth Amendment, the Indiana Constitution's Search and Seizure clause is given an independent interpretation and application. *Mitchell v. State*, 745 N.E.2d 775, 786 (Ind. 2001); *Baldwin v. Reagan*, 715 N.E.2d 332, 337 (Ind. 1999); *Moran v. State*, 644 N.E.2d 536, 540 (Ind. 1994). To determine whether a search or seizure violates the Indiana Constitution, courts must evaluate the "reasonableness of the police conduct under the totality of the circumstances." *Litchfield v. State*, 824 N.E.2d 356, 359 (Ind. 2005) (citing *Moran*, 644 N.E.2d at 539). "We believe that the totality of the circumstances requires consideration of both the degree of intrusion into the subject's ordinary activities and the basis upon which the officer selected the subject of the search or seizure." *Id*. at 360. In *Litchfield*, we summarized this evaluation as follows:
>
> > In sum, although we recognize there may well be other relevant considerations under the circumstances, we have explained reasonableness of a search or seizure as turning on a balance of: 1) the degree of concern, suspicion, or knowledge that a violation has occurred, 2) the degree of intrusion the method of the search or seizure imposes on the citizens' ordinary activities, and 3) the extent of law enforcement needs.
>
> *Id*. at 361.

*Myers v. State*, 839 N.E.2d 1146, 1153 (Ind. 2005).

Under the totality of the circumstances, while focusing on the three factors mentioned in *Litchfield*, we conclude that Officer Lichtsinn's seizure of the handgun was reasonable. The degree of suspicion that a violation had occurred was high. The officers were dispatched to respond to a report of an individual pointing a handgun at another and soon found Harris, a person closely matching the description of the alleged perpetrator. At the time, pointing a firearm at another person was a Class D felony, or a Class A misdemeanor if the firearm was

7

unloaded. *See* Ind. Code § 35-47-4-3 (2012). As the officers approached, they both observed Harris remove a handgun from his waistband and place it just inside the door to the Apartment.

Moreover, the degree of intrusion was slight. By the time Officer Lichtsinn seized the handgun, Harris was already handcuffed and it was not seized following an invasive search of his person. There is nothing in the record to suggest that Harris lived in the Apartment or had any other interest in it. The actual physical intrusion into the Apartment was slight, as Officer Lichtsinn indicated that he took perhaps a step inside. Finally, the needs of law enforcement to secure the handgun were great, as neither officer was able to ascertain if anybody was in the Apartment who could access the gun. We conclude that the seizure of the handgun was reasonable pursuant to Article I, Section 11. Consequently, the trial court did not abuse its discretion in allowing the admission of the handgun.

The judgment of the trial court is affirmed.

BARNES, J., and BROWN, J., concur.