## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Mar 12 2015, 9:34 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Nancy A. McCaslin
McCaslin & McCaslin
Elkhart, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Chandra K. Hein
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Malcolm Walker,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

March 12, 2015

Court of Appeals Case No. 20A03-1406-CR-222

Appeal from the Elkhart Superior Court.

The Honorable Charles Carter Wicks, Judge.

Cause No. 20D05-1308-FD-897

**Riley, Judge.**

## STATEMENT OF THE CASE

Appellant-Defendant, Malcolm A. Walker (Walker), appeals his conviction of failure to register as a sex offender, a Class D felony, Ind. Code § 11-8-8-17(a)(5) (2013).

We affirm.

## ISSUES

Walker raises two issues on appeal, which we restate as follows:

(1) Whether the trial court abused its discretion by admitting into evidence Walker's Notice of Obligation to Register; and

(2) Whether the State presented sufficient evidence to support Walker's conviction of failure to register as a sex offender.

## FACTS AND PROCEDURAL HISTORY

On October 8, 2004, Walker was convicted in LaPorte County, Indiana, of child molesting, a Class B felony, I.C. § 35-42-4-3 (2004). He was subsequently incarcerated in the Indiana Department of Correction (DOC) until July 27, 2011. Pursuant to Indiana's Sex Offender Registration Act (Act), upon his release from incarceration, Walker was required to register with the Indiana Sex

and Violent Offender Registry for a period of ten years.[1]  Accordingly, in August of 2011, Walker appeared at the Elkhart County Sheriff's Department to complete his initial registration.  On March 6, 2012, Walker renewed his annual registration.

[5]  At some point thereafter, Walker was arrested and detained in the Elkhart County Jail.  Upon his release on April 12, 2013, Walker received a Notice of Obligation to Register (Notice).  Specifically, the Notice informed Walker that he was "required to report IN PERSON AND REGISTER WITH the Sheriff's Department in the County of your residence within [seven] days of your release."  (State's Exh. 4).  Walker signed the Notice to acknowledge that he would be subject to prosecution for a Class D felony if he failed to comply.

[6]  On April 15, 2013, Walker appeared to complete his registration and submitted a change form, whereby he indicated that his former address was "819 [T]ipton" in Elkhart, Indiana, and that his new address was "511 [H]igh St[.] B" in Elkhart.  (State's Exh. 5).  Soon thereafter, the Sheriff's Department conducted a house check and found that Walker's address, as it was written, "did not exist."  (Tr. p. 153).  Specifically, there was no apartment "B" in the building; rather, the four units were addressed as 509, 509 ½, 511, and 511 ½ West High Street.  On June 11, 2013, Walker completed a second change of

---

[1] When seventeen-year-old Walker committed the sex offense in 2004, his obligation to register was codified at Indiana Code section 5-2-12-13(a)(4).  Effective July 1, 2006, the Act was repealed and recodified at Indiana Code chapter 11-8-8.

address form, listing his former address as "Tipton St. 819" and his new address as "511 West High St." (State's Exh. 8).

[7] Unable to verify Walker's address, Detective Brandon Denesuk (Detective Denesuk) contacted United States Marshall William Boothe (Marshall Boothe), who "assist[s] state and local authorities to locate [and] apprehend noncompliant and fugitive sex offenders." (Tr. p. 178). On June 18, 2013, Marshall Boothe attempted to locate Walker at 511 West High Street. He "interviewed the neighbors and was [only able] to find one individual in 511 that even knew Mr. Walker"—Dawn Harris (Harris), Walker's former step-sister. (Tr. p. 180). With Harris' consent, Marshall Boothe searched the apartment and found no "evidence of domain of Mr. Walker at the address." (Tr. p. 182). Also present during the house check was Pierre Fleming (Fleming)—who was Harris' boyfriend at the time and is Walker's brother. Fleming lived with Harris at 511 West High Street from February through June of 2013, but he did not provide any information to Marshall Boothe about Walker or his living arrangements. Marshall Boothe also attempted to locate Walker at 819 Tipton Street, but a female answered the door and would not allow him to come inside.

[8] On July 24, 2013, Detective Denesuk and Marshall Boothe conducted another house check at 511 West High Street. When they entered Harris' apartment, Detective Denesuk noticed several pieces of mail addressed to Walker on the table but observed nothing else to indicate that Walker was living there. Harris confirmed that Walker "was not living there and he had never lived there but he

had used the address for mailing purposes only." (Tr. p. 183). Harris signed an affidavit, averring that Walker had never lived at 511 West High Street.

[9] On August 20, 2013, the State filed an Information, charging Walker with one Count of failure to register as a sex or violent offender, a Class D felony, I.C. § 11-8-8-17(a)(5) (2013). On May 22-23, 2014, the trial court conducted a jury trial. At the close of the evidence the jury returned a guilty verdict. At the sentencing hearing on June 16, 2014, the trial court sentenced Walker to eighteen months, fully executed in the DOC.

[10] Walker now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

### I. *Admission of Evidence*

[11] At trial, the State offered into evidence the Notice, which was signed by Walker upon his release from the Elkhart County Jail and apprised him of his duty to register. Walker objected to the admission of the exhibit, arguing that "the same information could be conveyed to the jury with a redacted copy that deletes references to him being incarcerated." (Tr. p. 144). The trial court overruled the objection and admitted the Notice without redaction. Walker now claims that the admission of this evidence was contrary to Indiana Rule of Evidence 403.

[12] A trial court is vested with broad discretion in admitting and excluding evidence, and we review admissibility decisions only for an abuse of that discretion. *Halliburton v. State*, 1 N.E.3d 670, 675 (Ind. 2013). It is an abuse of

discretion if the trial court's ruling "is clearly against the logic and effect of the facts and circumstances before it." *Id.* On review, our court does not reweigh evidence and we consider only the evidence most favorable to the trial court's ruling. *Harris v. State*, 19 N.E.3d 298, 301 (Ind. Ct. App. 2014), *trans. denied*. We may affirm the trial court's ruling on any legal basis that is supported by the record. *Id.* Even if we find that the trial court has abused its discretion, we will not disturb the judgment if the admissibility decision amounts to harmless error. *Duvall v. State*, 978 N.E.2d 417, 422 (Ind. Ct. App. 2012), *trans. denied*.

[13] In general, evidence is admissible so long as it is relevant. *Herrera v. State*, 710 N.E.2d 931, 935 (Ind. Ct. App. 1999) (citing Ind. Evidence Rule 402), *trans. denied*. Evidence is relevant if it tends to make a material fact "more or less probable than it would be without the evidence." Evid. R. 401. However, Evidence Rule 403 provides that the trial court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence." A trial court has broad "latitude in weighing the probative value of the evidence against the possible prejudice of its admission." *Herrera*, 710 N.E.2d at 935.

[14] Walker contends that the fact of his incarceration was irrelevant to his charge of failing to register as a sex offender. We disagree. As the State points out, Walker was released from prison on his child molesting conviction in July of 2011, at which point he became obligated to register annually as a sex offender for a period of ten years. Thereafter, he registered with the Elkhart County

Sheriff's Department in August of 2011 and again in March of 2012. The Information charged him with "knowingly fail[ing] to reside at his registered address" between April 15, 2013 and July 24, 2013. (Appellant's Conf. App. p. 12). *See* I.C. § 11-8-8-17(a)(5). More than a year had passed between Walker's last registration and his address change on April 15, 2013. By indicating that Walker was incarcerated until April 12, 2013, the Notice serves to "clarify the timeline for the jury" and is therefore relevant. (State's Br. p. 6). Furthermore, we find that the Notice is relevant for the purpose of proving that Walker *knowingly* violated the Act because it specifically notified him that he must register his "place of residence." (State's Exh. 4).

[15] Walker next asserts that the Notice was unfairly prejudicial because he was convicted of child molesting in LaPorte County, so "the information about his incarceration [in Elkhart County] likely misled the jury as to the relationship between the incarceration and the obligation of registering." (Appellant's Br. p. 10). Again, we disagree. In evaluating "the likely unfair prejudicial impact, courts will look for the dangers that the jury will (1) substantially overestimate the value of the evidence or (2) that the evidence will arouse or inflame the passions or sympathies of the jury." *Duvall*, 978 N.E.2d at 428. Here, it was made clear to the jury that Walker's obligation to register stemmed from his 2004 conviction in LaPorte County. The reason for Walker's subsequent incarceration in the Elkhart County Jail was not discussed; nor was the fact of the incarceration itself emphasized. The jury was well aware of Walker's child molesting conviction, and any evidence that he may have committed a

subsequent offense was unlikely to impact its determination as to whether Walker did or did not reside at the registered address. Thus, we find no abuse of discretion in the trial court's conclusion that the danger of unfair prejudice did not outweigh the probative value of the evidence.

## II. *Sufficiency of the Evidence*

[16] Walker also claims that the State presented insufficient evidence to uphold his conviction for failure to register as a sex offender. When reviewing a challenge of the sufficiency of the evidence, our court considers only the probative evidence and any inferences that may reasonably be derived therefrom that are most favorable to the verdict. *Harris v. State*, 985 N.E.2d 767, 784 (Ind. Ct. App. 2013), *trans. denied*. We will affirm the conviction unless a reasonable trier of fact could not find that each element of the crime has been proven beyond a reasonable doubt. *Id.*

[17] In order to sustain Walker's conviction, the State was required to prove beyond a reasonable doubt that he knowingly or intentionally did "not reside at [his] registered address or location." I.C. § 11-8-8-17(a)(5) (2013). Upon his release from jail, Walker informed the Elkhart County Sheriff's Department that his address was "511 [H]igh St[.] B." (State's Exh. 5). A subsequent house check revealed that there was no apartment "B" at the given address. Two months later, Walker amended his address to simply "511 West High St." (State's Exh. 8). When Detective Denesuk and Marshall Boothe attempted to verify Walker's address, they learned that the apartment at 511 West High Street was leased by Harris, who confirmed that Walker did not live with her, but he

utilized her address to receive mail. During the trial, Harris testified that she had known Walker "since he was a kid," and although he was welcome to "hang out" at her apartment, she unequivocally stated that Walker did not live there. (Tr. pp. 196, 200).

[18] Furthermore, on both of his change of address forms, Walker had listed his *former* address as 819 Tipton Street. Yet, on April 16, 2013, just one day after submitting the first change form to the Sheriff's Department to register 511 West High Street as his address, Walker updated his information with the Bureau of Motor Vehicles and listed 819 Tipton Street as both his legal and mailing address. During the trial, Detective Denesuk explained that Walker's sex offender status precludes him from living within 1,000 feet of a school or public park, and "819 Tipton Street is approximately seven hundred and twenty-five (725) feet [from] Beck Elementary and it is less than two hundred fifty feet (250) east of [a youth baseball field]." (Tr. p. 152). According to Harris, Walker was living with his girlfriend "on Tip – Tip – Tenth – it start[s] with a T." (Tr. p. 200). Fleming also testified that Walker's girlfriend lived on Tipton Street and that Walker stayed with her several nights per week.

[19] We find it clear from the evidence that Walker attempted to circumvent the restrictions of the Act. He falsely registered the address of his former step-sister and his brother in order to disguise the fact that he was actually living with his girlfriend in the vicinity of an elementary school and a youth public park. Detective Denesuk and Marshall Boothe collectively made several attempts to verify Walker's address, but they never found more than a few pieces of mail to

connect Walker to 511 West High Street. In support of his claim of insufficient evidence, Walker relies on Fleming's testimony that Walker did live at the registered address. However, it is well established that our court does not interfere with the jury's determination of evidentiary weight, and it was certainly within the province of the jury to find the testimony of Detective Denesuk, Marshall Boothe, and Harris more credible than that of Fleming. *See Kelsie v. State*, 354 N.E.2d 219, 222 (Ind. 1976). Therefore, we find that there is sufficient evidence to support the determination that Walker was not living at his registered address.

## CONCLUSION

[20] Based on the foregoing, we conclude that the trial court acted within its discretion in admitting into evidence the Notice of Walker's obligation to register as a sex offender. We further conclude that the State presented sufficient evidence beyond a reasonable doubt to support Walker's conviction of Class D felony failure to register as a sex offender.

[21] Affirmed.

[22] Vaidik, C. J. and Baker, J. concur