

**FILED**

Jan 19 2017, 8:08 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

David A. Smith
McIntyre & Smith
Bedford, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Justin F. Roebel
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Daniel Ray Holloway, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | January 19, 2017 <br><br> Court of Appeals Case No. <br> 59A01-1604-CR-745 <br><br> Appeal from the Orange Circuit Court <br><br> The Honorable Larry R. Blanton, Judge <br><br> Trial Court Cause No. <br> 59C01-1402-FA-93 |

**Pyle, Judge.**

## Statement of the Case

Daniel Ray Holloway ("Holloway") appeals his convictions, received following a jury trial, for Class B felony dealing in methamphetamine,[1] Class D felony maintaining a common nuisance,[2] and Class D felony possession of chemical reagents or precursors.[3] At trial, the trial court admitted, over Holloway's objection, evidence of items used in methamphetamine manufacturing that investigators had discovered during a warrantless search of Holloway's car. On appeal, Holloway argues that the trial court abused its discretion in admitting this evidence because the search that produced it violated his right to privacy under the United States and Indiana Constitutions. We conclude that the trial court did not abuse its discretion because the exigent circumstances exception to the prohibition against warrantless searches under the United States Constitution applied, and the search was reasonable under the Indiana Constitution.

We affirm.

---

[1] IND. CODE § 35-48-4-1.1(a)(1). The dealing in methamphetamine statute has since been amended, and Holloway's conviction would now be considered a Level 5 felony. However, because Holloway committed his offense in February 2014, we will apply the version of the statute in effect at that time.

[2] I.C. § 35-48-4-13(b)(2). The maintaining a common nuisance statute has also been amended, and Holloway's offense would now be considered a Class A misdemeanor. However, we will apply the version of the statute in effect at that time.

[3] I.C. § 35-48-4-14.5(e). This offense would now be considered a Level 6 felony. Holloway was also convicted of resisting law enforcement and criminal recklessness and adjudicated an habitual substance offender, but he does not challenge those convictions or his adjudication on appeal.

## Issue

Whether the trial court abused its discretion in admitting evidence obtained as a result of a warrantless search of Holloway's vehicle.

## Facts

In the early morning hours of February 10, 2014, Harrison County Sheriff's Department Deputy, Michael Andry ("Deputy Andry"), was on duty in Palmyra, Indiana. He was patrolling a gas station when he saw a black Honda vehicle parked in front of the gas station door. He found the parking of the vehicle "odd" because it was "blocking the door completely," in spite of the fact that the parking lot was empty and there were actual parking spots available. (Tr. 122). As a result, he called dispatch and requested that the dispatcher check the BMV records for the Honda's license plate. The dispatcher ran the license plate and reported to him that the plate's registration was inactive and was associated with a different car, a Mitshubishi.

Deputy Andry followed the Honda, which had departed the gas station while he was checking its records, and activated his lights and siren. The Honda did not stop or pull over. Instead, it led Deputy Andry on a chase that lasted for fifty minutes and reached speeds of over 100 miles per hour. Eventually, Deputy Andry followed the Honda onto a street that he knew was a dead end. He exited his vehicle, believing that the occupants of the Honda were going to attempt to escape on foot. However, the Honda made a u-turn and drove back in his direction. As it attempted to get around his police car, Deputy Andry slid on some ice on the road, and the Honda ran into him. Deputy Andry fell onto

the car's hood and, as a result of the impact, accidentally discharged his firearm. The driver of the Honda, who was later identified as Holloway, "revv[ed] the motor up," and Deputy Andry then intentionally discharged his firearm three more times in Holloway's direction to make him stop the vehicle. (Tr. 132). Holloway suffered injuries to both of his hands as a result of the gunshots but finally stopped the vehicle.

[5] Conservation Officer Neal Bouwington ("Officer Bouwington"), who had followed Deputy Andry for part of the pursuit, arrived on the scene after the shooting. He and Deputy Andry determined that there were three people inside of the Honda and arrested all three of them. Officer Bouwington also looked into the vehicle and observed that it was a "mess," although he did not identify any specific items or conduct a search. (Tr. 223).

[6] Subsequently, other officers arrived as backup. Those officers learned the identities of the three people who had been in the Honda and became concerned, based on their prior knowledge of those individuals, that there might be a mobile methamphetamine laboratory in the vehicle. Rachel Kirkham ("Kirkham"), one of the passengers, also admitted that "there may be something methamphetamine related in the vehicle." (Tr. 243-44). As a result, the officers contacted State Police Detective Paul Andry ("Detective Andry"), who was trained to investigate methamphetamine labs.[4]

---

[4] Deputy Andry and Detective Andry are second cousins.

[7]     When Detective Andry responded to the scene, he saw a glass methamphetamine pipe lying in the snow outside of the Honda, which "led [him] to believe that methamphetamine might be involved." (Tr. 238). He performed a preliminary search of the vehicle and removed a zipped bag from the back of the vehicle. He opened the bag and discovered chemicals commonly used to manufacture methamphetamine, but he did not discover an active methamphetamine lab. Because the chemicals were not interacting, he determined that the Honda was safe to move, and the officers transported it to the Sheriff's Department. At that point, the officers obtained a search warrant and inventoried the remaining items in the car. During the inventory, they discovered several additional items commonly used in manufacturing methamphetamine, including, among other items, pseudophedrine, lithium batteries, muriatic acid, Coleman fuel, sulfuric acid, lye, instant cold packs, baggies, and a scale. They also found methamphetamine residue on a coffee filter, four baggies of methamphetamine, and a baggie containing a substance that appeared to be marijuana.

[8]     That same day, February 10, 2014, the State charged Holloway with Class A felony attempted murder; Class B felony dealing in methamphetamine; Class D felony maintaining a common nuisance; Class D felony possession of chemical reagents or precursors with intent to manufacture a controlled substance; Class D felony resisting law enforcement; and Class A misdemeanor criminal recklessness. The State also alleged that Holloway was an habitual substance

offender because he had two or more prior unrelated substance abuse convictions.

[9] A jury trial was held on February 9, 10, and 11, 2016. At trial, Holloway objected to the admission of the evidence found in the bag that Detective Andry had searched without a warrant. He argued that the search had violated his constitutional right to privacy and that the evidence seized as a result of the search should be excluded. In response to Holloway's objection, the trial court heard testimony from Detective Andry outside of the presence of the jury. Detective Andry testified that he had known the three individuals in the Honda from prior investigations. He also testified that he had been working on an active investigation that included them when he responded to the instant case. As a result, Detective Andrey knew that they had been involved in procuring precursors for methamphetamine manufacturing "as recent[ly] as the week before" the car chase. (Tr. 242). He testified that this knowledge made him afraid that there might be a mobile methamphetamine lab in the car. He explained, "When [an officer] told [him] that there had been a pursuit that had gone on for a lengthy period of time[,] [he] was concerned that these chemicals could be [] potentially explosive." (Tr. 243). Because there was a danger that one of the officers could be injured moving the car if there were an explosion, he believed that the car should not be moved until he could inspect its interior to make sure none of the chemicals was "in reaction." (Tr. 243). He also noted that there was a risk that evidence would be destroyed if there were an explosion.

[10]     After hearing Detective Andry's testimony, the trial court overruled Holloway's objection to the admission of the evidence discovered during the search of the bag. As a basis for its conclusion, the trial court reasoned that public safety concerns justified the search. Then, at the beginning of the next day of the jury trial, the trial court again addressed its reasoning for overruling Holloway's motion. It clarified that it thought the search was permissible under the exigent circumstances exception to the prohibition on warrantless searches—due to the need for officer safety and the potential for destruction of evidence—and under the custodial arrest exception.

[11]     At the conclusion of the trial, the jury acquitted Holloway of attempted murder, but it found him guilty of the remaining charges. Holloway then pled guilty to the habitual substance offender allegation. The trial court sentenced him to fourteen (14) years for dealing methamphetamine; one (1) year for maintaining a common nuisance; one (1) year for possession of chemical reagents; one (1) year for resisting law enforcement; and one (1) year for criminal recklessness, with all of the sentences to be served concurrently. The trial court also enhanced Holloway's sentence for dealing methamphetamine by four (4) years for his habitual substance offender adjudication, resulting in an eighteen (18)-year aggregate sentence. Holloway now appeals his convictions for dealing in methamphetamine, maintaining a common nuisance, and possession of chemical reagents.

# Decision

[12] On appeal, Holloway argues that the trial court abused its discretion by admitting the evidence of methamphetamine manufacturing chemicals and supplies that Detective Andry discovered during his warrantless search of the bag in Holloway's Honda. He argues that the search violated his right to privacy under the Fourth Amendment of the United States Constitution and Article 1, Section 11 of the Indiana Constitution and, accordingly, the evidence discovered in the search should have been excluded. Although the Federal and State constitutional provisions have similar structures, their interpretations and applications vary. Accordingly, we will address Holloway's argument under each provision separately.

[13] Preliminarily, though, we note that the trial court has broad discretion to rule on the admissibility of evidence. *Bradley v. State*, 54 N.E.3d 996, 999 (Ind. 2016). We review its rulings "'for abuse of that discretion and reverse only when admission is clearly against the logic and effect of the facts and circumstances and the error affects a party's substantial rights.'" *Id.* (quoting *Guilmette v. State*, 14 N.E.3d 38, 40 (Ind. 2014)). We will not reweigh the evidence and will resolve any conflicts in the evidence in favor of the trial court's ruling. *Miller v. State*, 51 N.E.3d 313, 315 (Ind. Ct. App. 2016), *reh'g denied.* However, the "'constitutionality of a search or seizure is a question of law, and we review it de novo.'" *Bradley*, 54 N.E.3d at 999 (quoting *Kelly v. State*, 997 N.E.2d 1045, 1050 (Ind. 2013)).

## 1. Fourth Amendment

The Fourth Amendment to the United States Constitution protects persons from unreasonable searches and seizures by prohibiting, as a general rule, searches and seizures conducted without a warrant supported by probable cause. *Moore v. State*, 49 N.E.3d 1095, 1101 (Ind. Ct. App. 2016), *reh'g denied.* As a deterrent mechanism, evidence obtained in violation of this rule is generally not admissible absent evidence of a recognized exception. *Id.* "'Where a search or seizure is conducted without a warrant, the State bears the burden to prove that an exception to the warrant requirement existed at the time of the search or seizure.'" *Mullen v. State*, 55 N.E.3d 822, 827 (Ind. Ct. App. 2016) (quoting *Brooks v. State*, 934 N.E.2d 1234, 1240 (Ind. Ct. App. 2010), *trans. denied*). "'Whether a particular warrantless search violates the guarantees of the Fourth Amendment depends on the facts and circumstances of each case.'" *Weathers v. State*, 61 N.E.3d 279, 285 (Ind. Ct. App. 2016) (quoting *Trotter*, 933 N.E.2d 572, 579 (Ind. Ct. App. 2010)).

Here, the trial court determined that there were exigent circumstances supporting Detective Andry's warrantless search. We have previously held that "'[t]he warrant requirement becomes inapplicable where the 'exigencies of the situation' make the needs of law enforcement so compelling that the warrantless search is objectively reasonable under the Fourth Amendment.'" *McDermott v. State*, 877 N.E.2d 467, 474 (Ind. Ct. App. 2007) (quoting *Holder v. State*, 847 N.E.2d 930, 936 (Ind. 2006)), *trans. denied.* Among the well-known circumstances that have justified a warrantless search or seizure include entries:

(1) to prevent bodily harm or death; (2) to aid a person in need of assistance; (3) to protect private property; and (4) to prevent actual or imminent destruction or removal of incriminating evidence before a search warrant may be obtained. Notably, in *Clark v. State*, 994 N.E.2d 252, 260 (Ind. 2013), our supreme court found that there were exigent circumstances to justify a search when, as in the instant case, officers suspected the presence of a mobile methamphetamine lab in the defendant's car.

[16] Holloway argues that the exigent circumstances exception did not apply here because Detective Andry and the other officers did not have probable cause to believe there was a methamphetamine lab in his car.[5] As Holloway argues, we have previously noted that "'while exigent circumstances justify dispensing with a search warrant, they do not eliminate the need for probable cause.'" *Montgomery v. State*, 904 N.E.2d 374, 378 (Ind. Ct. App. 2009) (quoting *Cudworth v. State*, 818 N.E.2d 133, 140 (Ind. Ct. App. 2004), *trans. denied*), *trans. denied.* "'[I]n an emergency, the probable cause element may be satisfied where the officers reasonably believe a person is in danger.'" *Id.* (quoting *United States v. Holloway*, 290 F.3d 1331, 1338 (11th Cir. 2002), *cert. denied*). Holloway

---

[5] Holloway also argues that the trial court abused its discretion for denying his objection to the admission of the evidence on one ground and then later clarifying that it intended to deny the objection on different grounds. He asserts that, as a result of the trial court's inconsistency, we should only address the trial court's original justification for denying the objection. However, we find that the trial court was consistent in its conclusion that there were public safety concerns justifying the search. Moreover, we may affirm a trial court's decision regarding the admission of evidence if it is sustainable on any basis in the record. *Barker v. State*, 695 N.E.2d 925, 930 (Ind. 1998), *reh'g denied*. Accordingly, the trial court's basis for admitting the evidence is not dispositive.

contends that the officers could not reasonably have believed that there was a methamphetamine lab in the car because the car did not smell like a meth lab.

[17] We conclude that Holloway's argument is essentially a request for us to reweigh the evidence, which we will not do. *See Miller*, 51 N.E.3d at 315. Even if there was not a methamphetamine smell outside of the car, there was evidence supporting the officers' belief that there might be a methamphetamine lab in the car. Detective Andry knew the occupants from prior and contemporaneous methamphetamine investigations and knew that Holloway had purchased precursors for making methamphetamine in the prior week. When Deputy Andry attempted to stop Holloway, Holloway led him on a fifty-minute chase. Then, Detective Andry found a methamphetamine pipe resting on the snow outside of the vehicle when he arrived on the scene. In light of these factors, and Detective Andry's testimony that chemicals in methamphetamine manufacturing could be explosive after a fifty-minute-long car chase, we conclude that Detective Andry and the other officers involved had probable cause to believe that the Honda might contain a mobile methamphetamine lab and that bystanders might be in danger. Accordingly, we conclude that there were exigent circumstances and, thus, the search did not violate Holloway's rights under the Fourth Amendment.

## 2. Article 1, Section 11

[18] Alternatively, Holloway argues that Detective Andry's search violated his right to privacy under the Indiana Constitution. Like the Fourth Amendment, Article I, Section 11 of the Indiana Constitution protects against warrantless

searches. However, the legality of a search under the Indiana Constitution "turns on an evaluation of the reasonableness of the police conduct under the totality of the circumstances." *Litchfield v. State*, 824 N.E.2d 356, 359 (Ind. 2005). Reasonableness of a search depends on a balance of: (1) the degree of concern, suspicion, or knowledge that a violation has occurred; (2) the degree of intrusion the method of the search or seizure imposes on the citizen's ordinary activities; and (3) the extent of law enforcement needs. *Id.* at 361. It is the State's burden to show that its intrusion into "'those areas of life that Hoosiers regard as private,'" was reasonable under the totality of the circumstances. *Austin v. State*, 997 N.E.2d 1027, 1034 (Ind. 2013) (quoting *State v. Quirk*, 842 N.E.2d 334, 339 (Ind. 2006)).

[19] The State argues that Holloway has waived his claim by failing to present an independent analysis. Although Holloway cited the Indiana Constitution and the *Litchfield* factors in his brief, he did not provide any analysis of the factors independent from his analysis under the Fourth Amendment. As the State notes, a defendant cannot invoke analysis of an issue under the Indiana Constitution without a separate and independent analysis of the claim. *Dye v. State*, 717 N.E.2d 5, 24 (Ind. 1999). Accordingly, we agree with the State that Holloway has waived his state constitutional claim. *See Francis v. State*, 764 N.E.2d 641, 647 (Ind. Ct. App. 2002) (holding that failure to provide a separate and independent Indiana Constitution analysis results in waiver).

[20] Waiver notwithstanding, it is clear that Detective Andry's search was reasonable under Article 1, Section 11. Specifically, he had a high degree of

suspicion that a violation had occurred because he was in the process of investigating Holloway in another methamphetamine investigation and knew he had purchased precursors the week before; Kirkham, the passenger in the Honda, had admitted that "there may be something methamphetamine related in the vehicle;" (Tr. 243-44); and he had found a methamphetamine pipe outside the vehicle.

[21] In addition, the intrusion of his search was slight. Holloway had already been arrested and transported to the hospital when the search occurred, so it did not involve a search of Holloway's person. *Harris v. State*, 19 N.E.3d 298, 303 (Ind. Ct. App. 2014) (holding that the intrusion of a search was "slight" when the defendant was already handcuffed and the search was not an invasive search of his person), *trans. denied*. Moreover, Detective Andry ended his preliminary search when he determined that the chemicals in the bag were not interacting and, therefore, there was not a safety risk that they would explode. The officers did not search the remainder of the vehicle until they had obtained a search warrant.

[22] Finally, law enforcement needs were high. As Detective Andry noted, there was a chance that the methamphetamine chemicals were explosive after the fifty-minute car chase and could injure officers if they exploded while the car was being transported to the station. This created a safety risk for the officers and also a risk that the evidence in the car would be destroyed.

[23]     In light of the above factors, we conclude that Detective Andry's search was reasonable and did not violate Holloway's right to privacy under the Indiana Constitution. Because we have also found that the search did not violate the Fourth Amendment, we, thus, also conclude that the trial court did not abuse its discretion in admitting the evidence discovered as a result of the search.

[24]     Affirmed.

Bradford, J., and Altice, J., concur.