

**FILED**

May 18 2023, 9:05 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Brian A. Karle
Ball Eggleston, PC
Lafayette, Indiana

ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Attorney General of Indiana

Daylon L. Welliver
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Adam B. Kenny,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

May 18, 2023

Court of Appeals Case No.
22A-CR-2082

Appeal from the Tippecanoe
Superior Court

The Honorable Steven Meyer,
Judge

Trial Court Cause No.
79D02-2110-F2-36

**Opinion by Judge Riley.**
Chief Judge Altice and Judge Pyle concur.

**Riley, Judge.**

## STATEMENT OF THE CASE

Appellant-Defendant, Adam Kenny (Kenny), appeals his convictions for dealing in methamphetamine, a Level 2 felony, Ind. Code § 35-48-4-1.1(a)(2)(e)(1); unlawful possession of a syringe, a level 6 felony, I.C. § 16-42-19-18(a); possession of paraphernalia, a Class C misdemeanor, I.C. § 35-48-4-8.3(b)(1); carrying a handgun without a license, a Class A misdemeanor, I.C. § 35-47-2-1; and three Counts of unlawful possession of a firearm by a dangerous person, Class A misdemeanors, I.C. § 35-47-4-6.5.

We affirm.

## ISSUE

Kenny presents this court with one issue, which we restate as: Whether the trial court's admission of evidence procured from the traffic stop of a taxi-van in which Kenny was a passenger was an abuse of discretion because the stop violated Kenny's Fourth Amendment rights.

## FACTS AND PROCEDURAL HISTORY

In October 2021, the Tippecanoe County Drug Task Force (Task Force) was investigating Kenny for dealing in methamphetamine and illegally carrying firearms. The Task Force had also received information that Heather Boruff (Boruff) was using her taxi-van to facilitate methamphetamine deals. On October 12, 2021, Task Force officers conducted surveillance of Kenny and Boruff at the Days Inn hotel off Frontage Road in Lafayette, Indiana. Kenny was followed by officers when he left the Days Inn and drove to a Taco Bell on

Teal Road, where he parked his car in the restaurant's parking lot. Shortly thereafter, Boruff was observed arriving at the Taco Bell in her taxi-van, whereupon Kenny got out of his own vehicle and got into Boruff's vehicle, sitting behind her in the back passenger seat. Boruff drove out of the Taco Bell parking lot and was followed by Detective Zachary Hall (Detective Hall). Detective Hall observed Boruff drive fifty miles per hour in a thirty-five-mile-per-hour zone, and Detective Hall observed Boruff fail to stop at an automated traffic signal. Detective Hall broadcast the fact that Boruff had committed two traffic infractions over the radio to other Task Force officers, including Detective Alix Sliger (Detective Sliger).

[5] At 2:57 p.m., after learning that Boruff had committed two traffic infractions, Detective Sliger initiated a traffic stop of Boruff's taxi-van at Manitou Drive and 18th Street. Detective Sliger had been informed by other officers that Kenny was "extremely violent[,]" was known to carry firearms, and had been physically combative with law enforcement in the past. (Transcript Vol. II, p. 19). Detective Sliger had also been informed by other law enforcement officers that Kenny did not have a permit to carry concealed firearms. Detective Sliger approached Boruff's van from the passenger side and made contact with Boruff and Kenny. Detective Sliger observed that Boruff, who immediately lit a cigarette, appeared to be nervous, in that her voice trembled and her hands shook. Boruff orally identified herself, but Kenny refused to do so. Detective Sliger spoke with Boruff about where they were going and radioed back Boruff's information from where he was standing. Detective Sliger chose to stay with

the taxi-van instead of returning to his squad car to conduct his investigation because of what he knew about Kenny and out of concern for his own safety. Detective Sliger saw that Kenny had two "massive bulges" in his front pants pockets, one on each side. (Tr. Vol. II, p. 21). While Detective Sliger was at the side of Boruff's van, Kenny pulled his hands in and out of his pockets, placing his hands on the bulges. This also made Detective Sliger concerned for his safety, and he decided to remove Kenny from the van before proceeding with the traffic stop. In preparation for removing Kenny from the van, Detective Sliger called for backup, and officer James Jarrett (Officer Jarrett) responded at 3:00 p.m. while Detective Sliger was still talking to Boruff. At 3:04 p.m., Officer Jarrett opened the van's sliding door and asked Kenny to exit. Kenny begrudgingly complied but moved his hands towards his waistband and near the bulge in his right front pants pocket. Officer Jarrett and Detective Sliger each grabbed one of Kenny's arms to place him in handcuffs. Kenny stiffened his body and briefly resisted the officers. Officer Jarrett asked Kenny if he had any weapons on his person, and Kenny stated that he had two firearms in his possession for which he had a permit. The officers performed a pat-down search and removed two firearms from Kenny's front pants pockets. Kenny was then escorted to Officer Jarrett's squad car. After Kenny was seated in the squad car, Detective Sliger ran Kenny's information through dispatch and checked to determine if Kenny's firearms had been reported as stolen. Detective Sliger then went back to Boruff's taxi-van and had her exit the vehicle. Upon being removed from the van, at 3:09 p.m., Boruff admitted that she had "riggs", which is a slang term for kits for using intravenous drugs, in

her van. (Tr. Vol. II, p. 25). At 3:10 p.m., a canine unit arrived, and at 3:11 p.m., the canine officer alerted to the presence of narcotics in Boruff's van. A black bag containing what was later determined to be 110.08 grams of methamphetamine was found under the third row of the van's seats. The search of the van also turned up a set of scales, baggies with suspected methamphetamine residue, and suspected Alprazolam. The same canine unit deployed at Boruff's van was then brought to Kenny's car which had remained parked at the Taco Bell. The canine officer performed an open-air sniff on Kenny's car and alerted to the presence of narcotics. A subsequent search of Kenny's car netted an additional firearm, syringes, and a pipe used to smoke methamphetamine.

[6] On October 19, 2021, the State filed an Information, charging Kenny with Level 2 felony conspiracy to commit dealing in methamphetamine; Level 2 felony dealing in methamphetamine; Level 3 felony possession of methamphetamine; Level 6 felony possession of a controlled substance (Alprazolam); Level 6 felony unlawful possession of a syringe; Class C misdemeanor possession of paraphernalia; Class A misdemeanor carrying a handgun without a license; and three Counts of Class A misdemeanor unlawful possession of a firearm by a dangerous person.

[7] On June 23, 2022, Kenny filed a motion to suppress evidence garnered from the traffic stop, arguing that he had independent standing to challenge the search of the interior of the taxi-van and that the traffic stop had been impermissibly prolonged. On July 11, 2022, the trial court held a hearing on Kenny's

suppression motion. When asked about preparing traffic citations after initiating the traffic stop, Detective Sliger testified that when he initially spoke with Boruff and Kenny, he "was simply going through [his] investigation. [He] wasn't up into that point yet." (Tr. Vol. III, p. 29). Detective Sliger could not recall if he had any conversations with other officers about issuing traffic citations after the stop but stated that, after he believed there was probable cause to search the taxi-van, the officers prioritized that task and that they would "get to the other stuff later on." (Tr. Vol. III, p. 34). No evidence was presented at the suppression hearing regarding the ownership of the taxi-van Boruff drove or that Kenny intended to pay Boruff for transporting him on the day of the traffic stop. On July 15, 2022, the trial court issued its Order, denying Kenny's motion to suppress, ruling that Kenny, as a passenger, had no standing to challenge the search of Boruff's taxi-van because, in light of the fact that there was no evidence that he had hired the taxi-van or paid Boruff, he was a "normal passenger in a moving vehicle[.]" (Appellant's App. Vol. III, p. 94). The trial court further ruled that the traffic stop was valid, even if pretextual, Kenny's detention and pat-down were valid, and the traffic stop was not unreasonably prolonged because, during the thirteen minutes between the initial stop and the dog sniff, the officers were dealing with "legitimate safety concerns presented by Kenny" and because Boruff had admitted that she had paraphernalia in the taxi-van. (Appellant's App. Vol. III, p. 96).

[8] On July 19, 2022, the trial court convened Kenny's two-day jury trial, which was bifurcated so that the three misdemeanor charges of unlawful possession of

a firearm by a dangerous person were not initially submitted to the jury. The jury found Kenny not guilty of Level 6 felony possession of a controlled substance but guilty of all the remaining charges. Kenny waived his right to a jury trial on the remaining charges. After further evidence was heard, the trial court found Kenny guilty of three Counts of unlawful possession of a firearm by a dangerous person.

[9] On August 15, 2022, the trial court convened Kenny's sentencing hearing. The trial court vacated Kenny's convictions for conspiracy to deal in methamphetamine and possession of methamphetamine. The trial court sentenced Kenny to an aggregate sentence of twenty years, with five years suspended to probation.

[10] Kenny now appeals. Additional facts will be provided as necessary.

# DISCUSSION

I. *Standard of Review*

[11] Kenny challenges the admission of evidence after his trial and conviction. Therefore, despite the fact that Kenny filed a motion to suppress, the issue is framed on appeal as whether the trial court erred in admitting the challenged evidence at trial. *Clark v. State*, 994 N.E.2d 252, 259 (Ind. 2013). We will review the trial court's evidentiary ruling for an abuse of its discretion, which only occurs when its decision is against the logic and effect of the facts and circumstances. *Thomas v. State*, 81 N.E.3d 621, 624 (Ind. 2017). We do not reweigh the evidence, considering any conflicting evidence in the light most

favorable to the trial court's ruling. *Meredith v. State*, 906 N.E.2d 867, 869 (Ind. 2009). We will defer to the trial court's findings of fact unless they are clearly erroneous. *Id.* However, when a challenge to the trial court's ruling implicates the constitutionality of the search or seizure of evidence, it raises a question of law that we review de novo. *Id.* We may affirm the trial court on any basis supported by the record, even if it was not a basis relied upon by the trial court. *Harris v. State*, 19 N.E.3d 298, 301 (Ind. Ct. App. 2014), *trans. denied*.

II. *Standing*

[12] Kenny argues that as "a passenger in a taxicab who expected to pay for the ride," he had a protectable Fourth Amendment privacy interest in the taxi-van that provided him with "standing" to challenge the search of the interior of the vehicle.[1] (Appellant's Br. p. 12). The United States Supreme Court has never expressly held that taxi passengers have a Fourth Amendment privacy interest in the interior of the taxi, and, in support of his argument that this court should recognize such an interest, Kenny only cites to non-binding authority from other jurisdictions. Kenny makes no separate argument on state constitutional grounds regarding standing.

---

[1] This court has acknowledged that in *Rakas v. Illinois*, 439 U.S.128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978), the United States Supreme Court abandoned the concept of standing, concluding that the issue of whether a defendant is asserting his own legal rights, as opposed to a third party's, is an issue more properly within the purview of substantive Fourth Amendment law than within that of standing. *Allen v. State*, 893 N.E.2d 1092, 1096 (Ind. Ct. App. 2008), *trans. denied*.

[13] Under our Fourth Amendment jurisprudence, the passenger in a car driven by its owner does not have standing to challenge the search of the vehicle, although a passenger in a car whose owner is absent may have standing. *See Campos v. State*, 885 N.E.2d 590, 598-99 (Ind. 2008) (concluding that where both the driver of the car and the passenger, Campos, said the car searched belonged to Campos' brother and it was uncontroverted that Campos had permission to use the car, Campos had standing to contest the search). As Kenny acknowledges on appeal, no Indiana court to date has concluded that a passenger who has paid for a ride in a taxi has a protectable Fourth Amendment privacy interest in the interior of the taxi sufficient to allow the passenger to contest the search of the taxi's interior.

[14] We observe, however, that it is established in Indiana that a passenger in a vehicle that is stopped may challenge "any part of a vehicle stop . . . because they are essentially seized when the driver is seized." *Id*. at 598 (citing *Brendlin v. California*, 551 U.S. 249, 255, 127 S.Ct. 2400, 2403, 168 L.Ed.2d 132 (2007)); *Marshall v. State*, 117 N.E.3d 1254, 1258 (Ind. 2019) (citing *Heien v. North Carolina*, 574 U.S. 54, 60, 135 S.Ct. 530, 536, 190 L.Ed.2d 475 (2014), in turn citing *Brendlin*). Here, Kenny argues that all the evidence obtained following the traffic stop, including the firearms removed from his person and the contraband found as a result of the search of the taxi-van, were the products of an impermissibly prolonged traffic stop. This court has resolved such challenges without determining that the passenger/defendant had separate standing to challenge the search of the interior of a vehicle. *See, e.g., Powers v.*

*State*, 190 N.E.3d 440, 443-47 (Ind. Ct. App. 2022) (addressing Powers' claim that evidence was procured from the search of the interior of the vehicle in which she was a passenger in violation of the Fourth Amendment because the traffic stop was unreasonably extended); *Chauncy v. State*, 204 N.E.3d 311, 314-20 (Ind. Ct. App. 2023) (appeal of the denial of a motion to suppress evidence found after the search of the interior of the automobile in which Chauncy was a passenger, challenging the basis for the initial traffic stop and the prolongation of the stop to conduct a dog sniff as violative of the Fourth Amendment). Kenny's only substantive argument regarding the challenged evidence is that it was garnered from a traffic stop that was impermissibly prolonged, and a determination of his claim of independent standing to search the taxi-van's interior is not necessary to reach some otherwise unavailable argument. Because Kenny's status as a passenger in the car driven by Boruff permits him to challenge the prolongation of the traffic stop, and thus to challenge the seizure of the challenged evidence, as a matter of judicial restraint, we decline to address his contentions regarding standing.

III. *Fourth Amendment*

[15] Kenny contends that the challenged evidence was garnered in violation of the Fourth Amendment, which states, in relevant part that "[t]he right of people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . ." U.S. CONST. amend. IV. A traffic stop is a seizure for purposes of the Fourth Amendment, one that seizes both the driver and any passengers in the vehicle. *Guthery v. State*, 180 N.E.3d

339, 347 (Ind. Ct. App. 2021) (citing *Brendlin*, 551 U.S. at 255), *trans. denied.* "It is unequivocal under our jurisprudence that even a minor traffic violation is sufficient to give an officer probable cause to stop the driver of a vehicle." *Austin v. State*, 997 N.E.2d 1027, 1034 (Ind. 2013). In addition to determining whether to issue a traffic ticket, an officer who has stopped a vehicle after witnessing a traffic infraction may make ordinary inquiries incident to a traffic stop, such as checking the driver's license, checking if the driver has any outstanding warrants, and inspecting registration and proof of insurance information. *Curry v. State*, 90 N.E.3d 677, 684 (Ind. Ct. App. 2012) (citing *Rodriguez v. United States*, 575 U.S. 348, 355, 135 S.Ct. 1609, 1615, 191 L.Ed.2d 492 (2015)), *trans. denied.* However, even a valid traffic stop "can become unlawful if it is prolonged beyond the time reasonably required to complete" the purpose of the stop. *Id.* (quoting *Illinois v. Caballes*, 543 U.S. 405, 407, 125 S.Ct. 834, 937, 160 L.Ed.2d 842 (2005)).

[16] Kenny argues that the traffic stop of the taxi-van was impermissibly prolonged beyond the purposes of the stop. We do not agree. Detective Sliger stopped the taxi-van after another officer witnessed Boruff committing two traffic infractions. Detective Sliger approached the vehicle and made some routine inquiries about who was in the vehicle and the purpose of their travel, all of which was permissible under the Fourth Amendment. *Rodriguez*, 575 U.S. at 355, 135 S.Ct. at 1615; *Curry*, 90 N.E.3d at 685 (preliminary inquiries regarding reasons for travel did not unconstitutionally prolong the stop). While making these inquiries, Detective Sliger observed that Kenny had large bulges in both

front pockets of his pants and that Kenny was placing his hands on the bulges, making the officer concerned for his safety. Detective Sliger decided to remove Kenny from the vehicle before proceeding with the stop, and he radioed for assistance. The officer's decision to remove Kenny from the vehicle, to radio for assistance, and to wait for the backup officer to arrive did not unreasonably prolong the traffic stop for purposes of the Fourth Amendment. *See Mitchell v. State,* 745 N.E.2d 775, 780 (Ind. 2001) (analogizing a traffic stop to a so-called "*Terry* stop" and holding that police may order occupants to exit a vehicle during a traffic stop, citing *Pennsylvania v. Mimms*, 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977)); *Tinker v. State*, 129 N.E.3d 251, 257 (Ind. Ct. App. 2019) (holding that delay accrued in waiting for an assisting officer to arrive for purposes of officer safety and briefing the assisting officer on the stop was reasonable).

[17] In addition, "[a]n officer may perform a *Terry* 'pat-down' of a driver or any passenger if he has reasonable suspicion that they may be armed and danergous." *Mitchell*, 745 N.E.2d at 780. Here, as the officers removed Kenny, who was known to be violent and aggressive with police, from the van, he was verbally aggressive, he briefly resisted, and he made movements toward his waistband and toward the large bulge Detective Sliger had observed in his right front pocket. The officers restrained Kenny and performed a pat-down search which netted two firearms. *See Tawdul v. State*, 720 N.E.2d 1211, 1216-17 (Ind. Ct. App. 1999) (holding that, consistent with the Fourth Amendment, an officer has a limited right to briefly detain a passenger at an otherwise valid traffic stop

"to ascertain the situation and to alleviate any concerns the officer has for his or her safety"), *trans. denied*. Detective Sliger then returned to the taxi-van to remove Boruff, who admitted that she had paraphernalia in the van, providing probable cause for the search of the van. *Danner v. State*, 931 N.E.2d 421, 428 (Ind. Ct. App. 2010) ("One exception to the warrant requirement is probable cause to believe an operable vehicle contains contraband or evidence of a crime."), *trans. denied*. Twelve minutes elapsed between the initiation of the traffic stop and Boruff's admission to the presence of paraphernalia in the van. Under these circumstances, we hold that while effectuating a valid traffic stop, the officers were engaged in activities that were permitted under the Fourth Amendment before Boruff provided probable cause to search the van, and, therefore, the stop was not unreasonably prolonged.[2]

[18] Kenny contends that he was unconstitutionally seized because he was the subject of a narcotics investigation, Detective Sliger never intended to issue a citation to Boruff for the traffic violations, and, in fact, no citation was written. Kenny's argument is essentially that the traffic stop was pretextual and that, pursuant to *Caballes* and *Rodriguez*, he could not be validly detained for any

---

[2] Kenny does not specifically address the gun and paraphernalia evidence gathered from the separate search of his car parked at the Taco Bell or explain why it should not have been admitted. We do not address that evidence separately except to note that a dog sniff is not a search protected by the Fourth Amendment, and, thus, not even reasonable suspicion of criminal activity is required to bring a canine unit to a car to perform an open-air dog sniff or to perform the sniff itself. *Austin*, 997 N.E.2d at 1027; *State v. Hobbs*, 933 N.E.2d 1281, 1286 (Ind. 2010).

period of time.[3] However, for purposes of the Fourth Amendment, the reasonableness of a traffic stop does not depend on the actual motivations of the individual officers involved. *Whren v. U.S.*, 517 U.S. 806, 813, 116 S.Ct. 1769, 1774, 135 L.E.2d 89 (1996); *see also Graham v. State*, 971 N.E.2d 713, 715-17 (Ind. Ct. App. 2012) (finding no Fourth Amendment violation where an officer observed Graham participating in a suspected drug deal, relayed his suspicion to another officer, and the other officer stopped Graham's car after witnessing Graham commit a traffic infraction), *trans. denied*. We also observe that, when asked about writing a warning or a ticket for the traffic infractions, Detective Sliger testified at the suppression hearing that when he initially approached the taxi-van, he "was simply going through [his] investigation. [He] wasn't up into that point yet" and that, after they believed there was probable cause to search the van, the officers prioritized that task and would "get to the other stuff later on." (Tr. Vol. III, pp. 29, 34). This testimony is consistent with an intention to write a warning or a ticket, and, insofar as Kenny contends it conflicts with other testimony on the subject, it is the evidence which we must credit, as it supports the trial court's evidentiary ruling. *See Meredith*, 906 N.E.2d at 869. In addition, in *Curry*, this court affirmed the admission of evidence garnered from

---

[3] Kenny also argues that his conviction should be reversed because the State spoliated evidence by purportedly failing to preserve Detective Sliger's body camera footage. Although Detective Sliger testified about why his body camera footage was not available, Kenny did not raise this argument in the suppression proceedings or object to the admission of any evidence at trial on that basis, and, therefore, he has waived the issue. *See Meriwether v. State*, 984 N.E.2d 1259, 1262 (Ind. Ct. App. 2013) (finding an argument not raised in the trial court to be waived on appeal), *trans. denied*; *Hart v. State*, 578 N.E.2d 336, 337 (Ind. 1991) ("In general, a party may not object to the admission of evidence on one basis at trial and for a different reason on appeal.").

a traffic stop which Curry, as the passenger in the vehicle, argued had been impermissibly extended to facilitate the arrival of a canine unit, even where we noted the driver "was released without being given a traffic citation or written warning." *Curry*, 90 N.E.3d at 682. Therefore, although the issuing of a written warning or ticket is relevant to the inquiry, it is not dispositive of whether the traffic stop at issue was impermissibly extended. Accordingly, because the traffic stop, even if pretextual, was not impermissibly prolonged, we do not disturb the jury's verdicts.

## CONCLUSION

[19] Based on the foregoing, we conclude that the trial court did not abuse its discretion in admitting evidence resulting from a valid traffic stop consistent with the Fourth Amendment.

[20] Affirmed.

[21] Altice, C. J. and Pyle, J. concur